No. 26-10290

# In the United States Court of Appeals For the Fifth Circuit

VICTOR MANUEL RAMIREZ NAJERA,

*Plaintiff – Appellant,*

*v.*

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant – Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No. 4:25-cv-00443-P

**OPENING BRIEF OF PLAINTIFF-APPELLANT**

**VICTOR MANUEL RAMIREZ NAJERA**

James Ristvedt (AZ Bar No. 035938)
**CONSUMER JUSTICE LAW FIRM PLC**
8095 North 85th Way
Scottsdale, Arizona 85258
T: (480) 626-1956
E: jristvedt@consumerjustice.com
*Attorneys for Plaintiff – Appellant
Victor Manuel Ramirez Najera*

## CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel of record certifies that the following listed persons and entities described in 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiff – Appellant:
   Victor Manuel Ramirez Najera

2. Defendant – Appellee:
   Experian Information Solutions, Inc.

3. Counsel for Plaintiff – Appellant:
   James Ristvedt, Consumer Justice Law Firm PLC
   David Chami, Consumer Justice Law Firm PLC
   Youssef Hammoud, The Credit Attorney, Inc.
   Daniel Ciment, Ciment Law Firm, PLLC

4. Counsel for Defendant – Appellee:
   William M. Jay, Goodwin Procter LLP
   Allison Allman, Jackson Walker

*/s/ James Ristvedt*
James Ristvedt
**CONSUMER JUSTICE LAW FIRM PLC**
*Attorneys for Plaintiff – Appellant*
*Victor Manuel Ramirez Najera*

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant Victor Manuel Ramirez Najera ("Plaintiff") respectfully requests oral argument. This appeal, which arises from the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), will require the Court to resolve issues about the duties of a consumer reporting agency under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i(a) in light of an extensive and complicated factual record. In addition, it will require the Court to address questions about the legal standards for proving damages causation and willful violations of the FCRA and about how those standards apply to the summary judgment record here. Plaintiff respectfully suggests that oral argument will assist the Court in resolving these issues.

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................. i

TABLE OF AUTHORITIES......................................................... iv

STATEMENT OF JURISDICTION ..........................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW........2

INTRODUCTION .............................................................................3

STATEMENT OF THE CASE...........................................................6

   I.   Factual Background ................................................................6

     A.  Experian's matching procedures created a "mixed file"
containing credit information belonging to Plaintiff's father. ...........6

     B.  Plaintiff discovered the mixed file after his housing application
was denied. ...............................................................................7

     C.  Experian repeatedly failed to follow its own procedures when
Plaintiff disputed the accounts. .......................................................7

     D.  Experian's conduct caused economic and emotional distress
damages. ...................................................................................11

   II.  Procedural Background.........................................................12

     A.  Plaintiff sued Experian, AppFolio, and Rushmore under the
FCRA. ....................................................................................12

     B.  Plaintiff and Experian filed cross-motions for summary
judgment....................................................................................12

     C.  The district court denied Plaintiff's motion and granted
summary judgment to Experian. ....................................................13

SUMMARY OF ARGUMENT ........................................................14

STANDARD OF REVIEW..............................................................16

ARGUMENT ...................................................................................17

I.  The district court erred in ruling that Plaintiff could not prove damages because the district court improperly made credibility determinations, resolved disputed issues of fact in Experian's favor, and failed to consider evidence of additional actual damages. ........... 17

    A.  FCRA plaintiffs are entitled to economic and/or emotional distress damages when a defendant's violations are a substantial factor in causing damages; plaintiffs may prove damages through corroborating testimony, medical or psychological records, or a plaintiff's sufficiently articulated testimony. ................................... 17

    B.  The district court acknowledged that Plaintiff presented specific, corroborated evidence to establish genuine emotional injury.......... 19

    C.  The district court improperly made credibility determinations and resolved disputed issues of fact in Experian's favor.................. 22

    D.  The district court erred by failing to consider Plaintiff's evidence of other actual injuries. .............................................................. 30

    E.  Plaintiff provided sufficient evidence to permit a jury to find he suffered economic damages.......................................................... 34

II.  The district court erred by holding that Experian's matching procedures were reasonable as a matter of law because its decision failed to discuss Experian's post-dispute reporting procedures and because its decision drew inferences in Experian's favor and ignored evidence that proved Plaintiff's claims. ............................................. 35

    A.  To prove a violation of § 1681e(b), a plaintiff must show that a CRA reported inaccurate information because it failed to follow reasonable procedures to assure maximum possible accuracy. ....... 35

    B.  The district court erred by granting summary judgment on Plaintiff's post-dispute § 1681e(b) claims without considering Experian's failure to identify or defend any reasonable post-dispute reporting procedures. ................................................................. 36

C. The district court erred when it adopted Experian's theory of the facts and ignored evidence that would have allowed a jury to find that Experian followed unreasonable reporting procedures...........41

III. The district court erred in its rulings on Plaintiff's claim under § 1681i(a) because the undisputed facts showed that Experian never did more than conduct a data conformity review even though, for both disputes, it had more than enough information to warrant a more searching inquiry..............................................................................53

A. To prove a violation of § 1681i(a), a plaintiff must show that a CRA did not conduct a reasonable investigation after the plaintiff disputed the accuracy of information in its files or consumer reports. 53

B. The district court's findings require judgment for Plaintiff on the Second Dispute once the district court's damages ruling is reversed. 55

C. Experian's admissions and the undisputed facts establish that Experian failed to reasonably reinvestigate the First Dispute........55

IV. The district court erred by concluding that no reasonable jury could find Experian's violations were willful because the district court treated the "willful misrepresentation or concealment" standard as the exclusive test for determining willfulness without applying the recklessness standard from *Safeco*...................................................59

D. A jury could find Experian recklessly violated § 1681i(a)..........63

E. A jury could find Experian recklessly violated § 1681e(b).........67

**CONCLUSION AND RELIEF REQUESTED** ..................................70

# TABLE OF AUTHORITIES

**Cases**

*Aguirre v. City of San Antonio,*
   995 F.3d 395 (5th Cir. 2021) ......................................................23, 24

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ........................................................ 16, 22, 23

*Apocada v. Discover Fin. Servs.,*
   417 F. Supp. 2d 1220 (D.N.M. 2006)......................................................52

*Austin v. Kroger Tex., L.P.,*
   864 F.3d 326 (5th Cir. 2017) ........................................................16

*Bacharach v. Suntrust Mortg., Inc.,*
   827 F.3d 432 (5th Cir. 2016) ........................................................31

*Bailey v. Ramos,*
   125 F.4th 667 (5th Cir. 2025)........................................................24

*Benjamin v. Experian Info. Sols., Inc.,*
   561 F. Supp. 3d 1330 (N.D. Ga. 2021) ................................................49

*Boggio v. USAA Fed. Sav. Bank,*
   696 F.3d 611 (6th Cir. 2012) ........................................................56

*Brooks v. Miller,*
   78 F.4th 1267 (11th Cir. 2023)........................................................25

*Byrd v. City of Bossier,*
   624 F. App'x 899 (5th Cir. 2015) ....................................................24

*Cameron v. Greater New Orleans Fed. Credit Union,*
   713 F. App'x 238 (5th Cir. 2018) ....................................................34

*CFPB v. Sterling Infosystems, Inc.,*
   Case No. 1:19-cv-10824-AJN (S.D. N.Y. 2019) ..................................47

*Clark v. Dep't of Pub. Safety,*
   63 F.4th 466 (5th Cir. 2023)........................................................16

*Cortez v. Trans Union, LLC,*
   617 F.3d 688 (3d Cir. 2010)......................................................36, 54

*Cousin v. Trans Union Corp.*,
  246 F.3d 359 (5th Cir. 2001) .............................................. 17, 18, 36, 60

*Crabill v. Trans Union, L.L.C.*,
  259 F.3d 662 (7th Cir. 2001) ................................................... 36, 37

*Crump v. Carrington Mortg. Servs., LLC*,
  No. 18 C 2302, 2019 WL 118490 (N.D. Ill. Jan. 7, 2019).................... 37

*Cushman v. Trans Union Corp.*,
  115 F.3d 220 (3d Cir. 1997)..................................................... 54

*Dalton v. Cap. Assoc. Indus., Inc.*,
  257 F.3d 409 (4th Cir. 2001) ................................................... 40

*Darden v. City of Fort Worth, Texas*,
  880 F.3d 722 (5th Cir. 2018) ................................................... 24

*Daugherty v. Ocwen Loan Serv., L.L.C.*,
  701 Fed. App'x. 246 (4th Cir. 2017) ........................................... 56

*Dunmore v. Experian Info. Sols. Inc.*, No.
  2:24-CV-225-PPS-JEM, 2025 WL 2331036 (N.D. Ind. Aug. 13, 2025) 51

*F.T.C. v. RealPage, Inc.*,
  Case No. 3:18-cv-02737-N (N.D. Tex. 2018). ................................... 47

*F.T.C. v. TRW Inc.*,
  784 F. Supp. 361 (N.D. Tex. 1991) ......................................... 47, 67

*Fahey v. Experian Info. Sols., Inc.*,
  571 F. Supp. 2d 1082 (E.D. Mo. 2008) ......................................... 52

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ........................................................... 60

*Gadomski v. Equifax Info. Servs., LLC*,
  No. 2:17-CV-00670-TLN-AC, 2020 WL 3841041 (E.D. Cal. July 8,
  2020) ......................................................................... 49

*Garcia Delgado v. Experian Info. Sols., Inc.*,
  No. 4:24-cv-00637 (E.D. Tex. Jul. 10, 2026)................................... 46

*Garrett v. Experian Info. Sols., Inc.*,
  785 F. Supp. 3d 1077 (N.D. Fla. 2025)......................................... 51

*Graham v. CSC Credit Servs., Inc.*,
  306 F. Supp. 2d 873 (D. Minn. 2004) .......................................... 37

*Guimond v. Trans Union Credit Info. Co.,*
  45 F.3d 1329 (9th Cir. 1995) ........................................................ 17

*Hammer v. Equifax Info. Servs., LLC,*
  No. 3:18-CV-1502-C, 2019 WL 7602463 (N.D. Tex. Jan. 16, 2019) ..... 36

*Hargrave v. Fibreboard Corp.,*
  710 F.2d 1154 (5th Cir. 1983) ...................................................... 39

*Henson v. CSC Credit Servs.,*
  29 F.3d 280 (7th Cir.1994) ................................................ 38, 54, 56

*Hinkle v. Midland Credit Mgmt., Inc.,*
  827 F.3d 1295 (11th Cir. 2016) .................................................... 56

*Joassin v. Murphy,*
  661 F. App'x 558 (11th Cir. 2016) ............................................... 24

*Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. &*
  *Mech. Coll.,*
  90 F.4th 449 (5th Cir. 2024) ....................................................... 24

*Lazarre v. JPMorgan Chase Bank, N.A.,*
  780 F. Supp. 2d 1330 (S.D. Fla. 2011) ......................................... 37

*Levine v. World Fin. Network Nat'l Bank,*
  437 F.3d 1118 (11th Cir. 2006) .................................................... 17

*Lopez v. Experian Info. Sols., Inc.,*
  No. 19-CV-01954-RS, 2022 WL 1569285 (N.D. Cal. May 18, 2022) .... 37

*Losch v. Nationstar Mortg. LLC,*
  995 F.3d 937 (11th Cir. 2021) ............................................... passim

*Marchisio v. Carrington Mortg. Servs., LLC,*
  919 F.3d 1288 (11th Cir. 2019) .................................................... 66

*Pedro v. Equifax, Inc.,*
  868 F.3d 1275 (11th Cir. 2017) .................................................... 17

*Philbin v. Trans Union Corp.,*
  101 F.3d 957 (3d Cir. 1996) ........................................................ 18

*Picou v. City of Jackson, MS,*
  48 F. App'x 102 (5th Cir. 2002) ................................................... 19

*Rambarran v. Bank of Am., N.A.,*
  609 F. Supp. 2d 1253 (S.D. Fla. 2009) ......................................... 65

*Reeves v. Equifax Info. Servs.*, LLC,
    No. 2:09CV43KS-MTP, 2010 WL 2036661 (S.D. Miss. May 20, 2010)66
*Reitz v. Woods*,
    85 F.4th 780 (5th Cir. 2023) ............................................................... 16
*Ricketson v. Experian Info. Sols., Inc.*,
    266 F. Supp. 3d 1083 (W.D. Mich. 2017) ........................................... 66
*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ............................................................ 60, 62, 69
*Sapia v. Regency Motors of Metairie, Inc.*,
    276 F.3d 747 (5th Cir. 2002) ............................................................ 31
*Schultz v. HomeBridge Fin. Servs., Inc.*,
    No. 24-50193, 2025 WL 1467431 (5th Cir. May 22, 2025) ...... 60, 61, 62
*Scott v. Harris*,
    550 U.S. 372 (2007) ......................................................................... 23
*Shaunfield v. Experian Info. Sols., Inc.*,
    991 F. Supp. 2d 786 (N.D. Tex. 2014) ............................................... 37
*Smith v. LexisNexis Screening Solutions, Inc.*,
    837 F.3d 604 (6th Cir. 2016) ............................................................ 17
*Smith v. Santander Consumer USA, Inc.*,
    703 F.3d 316 (5th Cir. 2012) ............................................................ 34
*Stevenson v. TRW Inc.*,
    987 F.2d 288 (5th Cir. 1993) .................................................... passim
*Thompson v. San Antonio Retail Merch. Ass'n*,
    682 F.2d 509 (5th Cir. 1982) ............................................................ 36
*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .................................................................... 18, 32
*Turner v. Baylor Richardson Med. Ctr.*,
    476 F.3d 337 (5th Cir. 2007) ............................................................ 16
*Vadie v. Miss. State Univ.*,
    218 F.3d 365 (5th Cir. 2000) ............................................................ 19
*Wantz v. Experian Info. Solutions*,
    386 F.3d 829 (7th Cir. 2004) ............................................................ 17

**Statutes**

15 U.S.C. § 1681 .................................................................i, 1

15 U.S.C. § 1681e(b) ...................................................... passim

15 U.S.C. § 1681i(a).................................................i, 1, 2, 53, 54

15 U.S.C. § 1681i(a)(1)(A) .......................................................54

15 U.S.C. § 1681n(a)(1)(A) .......................................................17

15 U.S.C. § 1681o(a)(1) ...........................................................17

15 U.S.C. § 1681p ...................................................................1

28 U.S.C. § 1291 .....................................................................1

28 U.S.C. § 1331 .....................................................................1

**Other Authorities**

12 CFR Part 1022, "Fair Credit Reporting; Name-Only Matching
  Procedures." CFPB. (November 3, 2021) .............................................48

Fannie Mae Selling Guide § B3-2-03 (Feb. 5, 2025)................................28

Freddie Mac Single-Family Seller/Servicer Guide § 5401.2 ..................28

**Rules**

Fed. R. App. P. 4(a)(1)(A) ...........................................................1

Fed. R. Civ. P. 56(a)..................................................................16

## STATEMENT OF JURISDICTION

This case arises from Plaintiff's claims against Defendant-Appellee Experian Information Solutions, Inc. ("Experian") under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). *See* ROA.22-57, Complaint. Plaintiff asserted causes of action against Experian under 15 U.S.C. §§ 1681e(b) and 1681i(a). Accordingly, the district court had jurisdiction of this case under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

Plaintiff and Experian filed cross-motions for summary judgment. ROA.1120-23; ROA.1493-94. On March 26, 2026, the district court entered an Opinion and Order denying Plaintiff's Motion for Partial Summary Judgment and granting Experian's Motion for Summary Judgment, and a Final Judgment, dismissing the case with prejudice. Tab 4, RE-29-47, ROA.7268-86, Opinion.

Plaintiff filed his Notice of Appeal (Tab 2, RE-23-25, ROA.7288-7289) in the district court on March 31, 2026, making it timely under Fed. R. App. P. 4(a)(1)(A). Because Plaintiff timely appeals from a final judgment of the district court, this Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.    Whether the district court erred in ruling that Plaintiff could not prove damages when the district court improperly made credibility determinations, resolved disputed issues of fact in Experian's favor, and failed to consider evidence of additional actual damages.

II.   Whether the district court erred in ruling that Experian's matching procedures were reasonable as a matter of law when the district court drew inferences in Experian's favor and ignored evidence that proved Plaintiff's claims under § 1681e(b).

III.  Whether the district court erred in its rulings on Plaintiff's claims under § 1681i(a) when the undisputed facts showed that Experian did not perform any reinvestigation in response to Plaintiff's Second Dispute, and never did more than conduct a data conformity review in response to Plaintiff's First Dispute despite possessing more than enough information to warrant a more careful inquiry.

IV.   Whether the district court erred by treating the "willful misrepresentation or concealment" standard as the exclusive test for determining willfulness without applying the test for reckless enumerated by the Supreme Court in *Safeco*.

## INTRODUCTION

This case began with an impossibility. Experian reported that Plaintiff was responsible for a mortgage originated when he was thirteen. The mortgage belonged to his parents. Plaintiff and his father shared a name and once shared an address, but were born twenty-five years apart, and only Plaintiff had a Social Security Number ("SSN"). Experian nevertheless reported the mortgage – and its extensive history of missed payments – in Plaintiff's credit file because its matching algorithm allows accounts to be assigned based on a matching name and address alone.

The error should have been easy to correct. It was not. After discovering the mixed file, Plaintiff called Experian and identified both mortgage accounts as not his. Experian's employee asked no follow-up questions, transmitted automated forms to the creditors, and accepted their responses. Despite the tradelines being related, and despite one furnisher returning a completely different SSN and a date of birth ("DOB") twenty-five years earlier than Plaintiff's, Experian continued reporting the related Rushmore mortgage in Plaintiff's file.

Plaintiff then did everything Experian could have asked. He submitted a written dispute explaining that he was thirteen when the

mortgage originated and supplied identity documents, his father's identity documents, mortgage papers, and even school records showing that in 2009 he was playing junior high football, not applying for a mortgage. Experian admits this evidence surpassed its own requirements and that the account should have been deleted. But Experian again ignored the evidence, sent another automated form falsely stating that Plaintiff had provided an unspecific dispute, and continued reporting the mortgage for another year. Only after Plaintiff sued did Experian finally review the same documents and remove the account.

Those facts should have presented straightforward jury questions. Indeed, the district court itself held Experian's handling of the Second Dispute was unreasonable, yet granted summary judgment for Experian on all claims. Its decision turned on a five-point difference between credit scores generated fifteen months after Plaintiff's documented distress culminated in an emergency room visit. From that isolated comparison, the court inferred that the inaccurate mortgage somehow benefited Plaintiff and that no reasonable jury could believe it caused him harm. That conclusion disregarded what the account communicated: that Plaintiff already had a mortgage, had missed payments, and presented

4

debt-to-income and underwriting concerns. It also disregarded medical records, corroborating witnesses, reputational injuries, lost time, housing complications, and testimony about Plaintiff's anxiety and humiliation.

The remainder of the order followed the same pattern. The court accepted Experian's account of its matching system while overlooking testimony that no matching SSN or DOB was required. It found the First Dispute reinvestigation reasonable despite the age impossibility, conflicting furnisher responses, and admitted procedural violations. It ignored Plaintiff's claim that Experian continued preparing inaccurate reports after receiving conclusive notice of the error. And although *Safeco* recognizes recklessness as an independent form of willfulness, the court treated deliberate misrepresentation or concealment as mandatory.

This appeal asks the Court to restore the jury's role. Experian's admissions establish liability as to the Second Dispute and support judgment for Plaintiff on additional issues. At minimum, disputes concerning Experian's procedures, reinvestigations, willfulness, and damages could not lawfully be resolved by weighing evidence, selecting Experian's preferred inferences, and disbelieving Plaintiff's witnesses. The judgment should be reversed and the case returned for trial.

# STATEMENT OF THE CASE

## I. Factual Background

### A. Experian's matching procedures created a "mixed file" containing credit information belonging to Plaintiff's father.

Experian receives account information from "furnishers" and uses an algorithm called "Find Consumer" to associate incoming data with consumer credit files, each identified by a Personal Identification Number ("PIN"). ROA.1995:1-5, Iwanski Depo. I; ROA.2774:2-9, Sumida Depo. Find Consumer can assign incoming data to an existing PIN based on a matching name and address; it does not require a matching Social Security number ("SSN") or date of birth ("DOB"). ROA.2064:3-2065:4, Iwanski Depo. I; ROA.2854:12-22, Sumida Depo. Experian data management procedures assess whether incoming data is formatted correctly but do not evaluate accuracy. ROA.3254:10-3255:8, Iwanski Depo. II.

Applying those procedures, Experian reported two mortgage tradelines – a Rushmore Loan Management Services account (the "Rushmore Account") and PennyMac Loan Services account (the "PennyMac Account") – in Plaintiff's credit file. ROA.1819-20. Both tradelines obviously concerned the same mortgage obtained by Plaintiff's

parents for their Orcas Street home where Plaintiff once lived. *See* ROA.1678:19-1679:5, Plaintiff's Depo.; *see also* Tab 15, RE-96-97, Doc. 117-3, App. 288-289, Admin Report. Although Plaintiff and his father shared a name and former address, their DOBs were twenty-five years apart, and Plaintiff had an SSN while his father did not. Tab 10, RE-74-83, ROA.1823-1832. The mortgage originated in 2009, when Plaintiff was thirteen and legally incapable of executing the loan. *See* Tab 15, RE-96-97, Doc. 117-3, App. 288-289, Admin Report].

### B. Plaintiff discovered the mixed file after his housing application was denied.

In May 2023, shortly before the birth of his child, Plaintiff applied to Hartford House Apartments ("Hartford House") in Nashville, Tennessee. *See* ROA.1683:19-1686:8, ROA.1719:8-23, Plaintiff's Depo. Hartford House obtained an AppFolio tenant screening report containing Experian credit data, including the Rushmore and PennyMac Accounts, and denied Plaintiff's application. ROA.1645:8-1647:1, Plaintiff's Depo.; ROA.1819-20. Plaintiff then focused on finding alternative housing and caring for his newborn. ROA.1719:8-23, Plaintiff's Depo.

### C. Experian repeatedly failed to follow its own procedures when Plaintiff disputed the accounts.

On February 12, 2024, Plaintiff called Experian and disputed the

Rushmore and PennyMac Accounts, informing Experian that neither account belonged to him. *See* ROA.1841 0:00-1:00, First Dispute. Although Experian's procedures required the agent to ask why the accounts were not his, the agent failed to follow those procedures, did not ask follow-up questions, and advised that the creditors had thirty days to respond. *See* ROA.1841 0:00-1:00, First Dispute; ROA.2032:21-2033:21, Iwanski Depo. I; ROA.2624:14-2625:12, Hamilton Depo.; ROA.6143:22-6144:14, ROA.6203:10-6204:19, Tab 5 RE-49 Avalos Depo.

Experian sent automated consumer dispute verification forms ("ACDVs") to PennyMac and Rushmore; PennyMac "verified" its reporting but returned a different SSN and DOB, while Rushmore "verified" its reporting without changing any PII. *See* Tab 14, RE-94, Doc. 117-4, App. 328, PennyMac ACDV Response; Tab 9, RE-72, ROA.1844, First Rushmore ACDV Response. Experian's ███████████ ███████ when an ACDV response contained a completely different SSN, but the agent instead deleted the PennyMac Account without investigating whether the file was mixed. Tab 8 RE-61-62 ROA.2009:10-2010:5, ROA.2040:5-12, ROA.2045:3-23, ROA.2052:17-2054:5, Iwanski Depo. I; Tab 12, RE-89, Doc. 117-9, App. 2093, ACDV Procedures; Tab 5

8

RE-51 ROA.6206:14-6211:11, Avalos Depo.; ROA.2198, First Dispute Results. Experian continued reporting the Rushmore Account even though its records showed – and Experian admitted it was obvious – that the two tradelines concerned the same mortgage. *See* ROA.2198, First Dispute Results; Tab 15, RE-96-97, Doc. 117-3, App. 288-289, Admin Report; Tab 8, RE-63-64, ROA.2035:25-2036:21, Iwanski Depo. I.

On July 10, 2024, Plaintiff submitted a written dispute explaining that he was thirteen when the mortgage originated, that his SSN did not appear on loan documents, and attached his Social Security card, passport, birth certificate, driving permit, his father's Individual Taxpayer Identification Card, the mortgage documents, and school records showing he was in eighth grade in 2009. Tab 10, RE-76-85, ROA.1825-1837, Plaintiff's Second Dispute.

Experian admits that it failed to follow three procedures applicable to the Second Dispute: Experian failed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (2) delete the account under the procedure governing accounts opened before a consumer turned eighteen; and (3) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Tab 8, RE-

61-62 ROA.2009:10-2010:5, RE-66-69 ROA.2112:9-2115:9, RE-70 ROA.2125:1-18, Iwanski Depo. I; Tab 13, RE-91:22 – RE-92:17, Methvin Depo.; Tab 11, RE-87, Doc. 117-10 Disputes Trades; ROA.5848, EPC Sorting Procedures; Tab 5, RE-49-51, ROA.2701:20-2703:13, Avalos Depo., 214:20-216:13.

Instead of following procedures that specifically applied to the Second Dispute, Experian sent another ACDV to Rushmore, falsely stating Plaintiff "[d]id not provide specific dispute." *See* Tab 7, RE-59, ROA.2579, Second Rushmore ACDV Response. Rushmore returned no SSN and no documentation rebutting Plaintiff's evidence, but Experian nevertheless accepted its verification and continued reporting the account. Tab 7, RE-59, ROA.2579, Second Rushmore ACDV Response; ROA.2581, Second Dispute Results.

Experian did not delete the Rushmore Account from Plaintiff's credit file until June 11, 2025 – more than six weeks after Plaintiff filed suit – when it manually reviewed the same letter and documents Plaintiff supplied nearly a year prior. *See* Tab 6, RE-53-55, ROA.2606:22-2608:4, RE-56-57, ROA.2609:19-2610:11, Hamilton Depo.

**D.** **Experian's conduct caused economic and emotional distress damages.**

After Hartford House denied Plaintiff's housing application, he rented space above a friend's garage. ROA.1647:5-1648:11, Plaintiff's Depo. After Experian failed to remove the Rushmore Account following the First Dispute, Plaintiff spent substantial time researching how to correct his file and collecting evidence for the Second Dispute. ROA.1635:4-1636:6, ROA.1748:10-1750:15, Plaintiff's Depo.; ROA.2638-39 ¶¶ 10-11, Espinoza Decl.

Plaintiff testified about the emotional distress he suffered, explaining that Experian's conduct caused anxiety, humiliation, recurring headaches, sleeplessness, nausea, fatigue, mental fog, a racing heart, sweaty palms, and difficulty functioning normally. ROA.1604:16-1606:5, ROA.1621:2-1623:9, ROA.1649:7-1651:1, Plaintiff's Depo. He described the humiliation of explaining the mortgage and missed payments belonged to his parents and testified the reporting put his life "on pause." ROA.1602:4-1606:5, Plaintiff's Depo.

Plaintiff's fiancé, Paola Espinoza, observed that Plaintiff became visibly stressed, exhausted, frustrated, and suffered disrupted sleep and a new onset of grinding his teeth at night. ROA.2687:25-2688:8,

11

ROA.2689:4-10, ROA.2711:6-16, ROA.2714:13-19, Espinoza Depo. On March 5, 2024, after several weeks of headaches and chest symptoms, Plaintiff went to the emergency room believing he was having a heart attack. ROA.2684:21-2685:20, Espinoza Depo.; ROA.1358-77, Plaintiff's Medical Records. The medical records document chest tightness, pain radiating to his back, and substantial stress; Plaintiff was diagnosed with anxiety and depression and prescribed medication. ROA.1358-77, Plaintiff's Medical Records. His symptoms persisted for more than a year and some continued at the time of his deposition. ROA.1621:2-1622:1, ROA.1623:3-9, ROA.1649:7-1651:1, ROA.1715:3-1716:7, Plaintiff's Depo.

## II. Procedural Background

### A. Plaintiff sued Experian, AppFolio, and Rushmore under the FCRA.

On April 22, 2025, Plaintiff sued Experian, AppFolio, and Rushmore. Relevant here, Plaintiff alleged that Experian violated § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy and § 1681i(a) by failing to reasonably reinvestigate his disputes. *See* ROA.51-55 ¶¶ 152-69, Complaint.

### B. Plaintiff and Experian filed cross-motions for summary judgment.

Plaintiff sought partial summary judgment on liability under §§

1681e(b) and 1681i(a), willfulness, and the existence of actual damages, leaving the amount of actual and punitive damages for trial. ROA.1496-1548. Experian sought summary judgment on all claims, arguing its matching procedures and First Dispute reinvestigation were reasonable and that Plaintiff could not establish damages or willfulness. ROA.1125-71.

## C. The district court denied Plaintiff's motion and granted summary judgment to Experian.

The district court denied Plaintiff's motion and granted Experian's, concluding that Experian's reporting procedures and First Dispute reinvestigation were reasonable as a matter of law, Plaintiff lacked evidence of "willful misrepresentations or concealments," and Plaintiff could not prove damages or causation. Tab 4, RE-35, ROA.7274, RE-38-46, ROA.7277-85, Opinion.

## SUMMARY OF ARGUMENT

First, the district court erred by holding Plaintiff could not prove actual damages. Plaintiff presented testimony, medical records, and corroborating evidence that Experian's inaccurate reporting caused anxiety, humiliation, sleeplessness, physical symptoms, and an emergency room visit. He also showed reputational harm, lost time, housing difficulties, and mortgage complications. Despite explicitly acknowledging this evidence, the court weighed and rejected it, improperly making credibility determinations and drawing causation inferences against Plaintiff because his credit score allegedly changed by five points fifteen months after his emergency room visit.

Second, the district court erred by finding Experian's procedures reasonable as a matter of law. Experian's system permitted it to associate mortgage accounts with Plaintiff based on name and address alone. Plaintiff presented evidence that this procedure foreseeably confuses family members, that other national CRAs avoided the same error, and that Experian continued reporting after receiving conclusive notice that the mortgage belonged to Plaintiff's father. Experian also failed to identify or defend any post-dispute reporting procedures. This record

14

supported judgment for Plaintiff on aspects of his § 1681e(b) claim and, at minimum, presented classic jury questions concerning reasonableness.

Third, the district court's rulings under § 1681i(a) cannot stand. The court found Experian's reinvestigation of the Second Dispute unreasonable and rejected that claim only because of its damages ruling. Reversal on damages therefore requires judgment for Plaintiff on that violation. The First Dispute also presented jury questions because Experian ignored an obvious age impossibility, conflicting furnisher responses, the relationship between the two mortgage tradelines, and its own procedures requiring additional inquiry.

Finally, the district court applied an improperly restrictive willfulness standard. Although the Supreme Court recognizes knowing and reckless violations, the court treated deliberate misrepresentation or concealment as mandatory. Experian's notice of mixed file risks, repeated procedural violations, disregard of conclusive documentation, production quotas, and minimal quality review permitted a jury to find willful violations of both §§ 1681e(b) and 1681i(a). The judgment should be reversed, judgment entered for Plaintiff where the record permits only one conclusion, with remaining issues remanded for trial.

## STANDARD OF REVIEW

This Court "'reviews a grant of a motion for summary judgment *de novo*, and applies the same standard as the district court, viewing the evidence in the light most favorable to the nonmovant.'" *Reitz v. Woods*, 85 F.4th 780, 787 (5th Cir. 2023) (quoting *Clark v. Dep't of Pub. Safety*, 63 F.4th 466, 469 (5th Cir. 2023)). Similarly, this Court conducts a *de novo* review of the denial of a summary judgment motion, which presents purely legal questions on a fully developed cross-motion record. *See Austin v. Kroger Tex., L.P.,* 864 F.3d 326, 328 (5th Cir. 2017).

Summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). District courts must "'consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence.'" *Reitz*, 85 F.4th at 787 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

**ARGUMENT**

I. **The district court erred in ruling that Plaintiff could not prove damages because the district court improperly made credibility determinations, resolved disputed issues of fact in Experian's favor, and failed to consider evidence of additional actual damages.**

A. **FCRA plaintiffs are entitled to economic and/or emotional distress damages when a defendant's violations are a substantial factor in causing damages; plaintiffs may prove damages through corroborating testimony, medical or psychological records, or a plaintiff's sufficiently articulated testimony.**

When a person "is negligent in failing to comply with any requirement imposed under [the FCRA]," that person is liable for "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. §§ 1681o(a)(1), 1681n(a)(1)(A). Recoverable injuries include economic injuries resulting from adverse actions like denial of credit or housing, emotional distress injuries, and lost time. *Cousin v. Trans Union Corp.*, 246 F.3d 359, 369 n.15 (5th Cir. 2001); *Smith v. LexisNexis Screening Solutions, Inc.*, 837 F.3d 604, 611 (6th Cir. 2016); *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1124 (11th Cir. 2006); *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017).

17

Publication of inaccurate information also causes reputational injuries analogous to common law defamation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432-33 (2021). When proving reputational injuries, a plaintiff need not show any particular consequences from the injury like adverse credit consequences; false reporting is injurious *per se. See Losch v. Nationstar Mortg. LLC,* 995 F.3d 937, 943 (11th Cir. 2021); *see also Ramirez*, 594 U.S. at 433 (concluding a concrete injury exists when inaccurate information is published to third parties, regardless of whether such information caused other harm). An FCRA-plaintiff need not prove a defendant's violation was the "but for" cause of damages, only that it was a "substantial factor" in causing damages. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 968 (3d Cir. 1996).

A plaintiff can provide proof of damages through "the observation[s] of others," "corroborating testimony," or "medical or psychological evidence in support of the damage award." *Cousin*, 246 F.3d at 371 (citations omitted). In the absence of such evidence, a plaintiff's testimony alone is sufficient to prove emotional distress damages when the testimony is "sufficiently articulated" and "establish[es] that the plaintiff suffered demonstrable emotional distress." *Picou v. City of*

*Jackson, MS*, 48 F. App'x 102 (5th Cir. 2002) (citing *Vadie v. Miss. State Univ.*, 218 F.3d 365, 377 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001), and *cert. denied*, 531 U.S. 1150 (2001)).

**B.    The district court acknowledged that Plaintiff presented specific, corroborated evidence to establish genuine emotional injury.**

Plaintiff presented precisely the kind of specific, corroborated evidence contemplated by this Circuit. The district court acknowledged that Plaintiff "presented specific evidence and corroborating testimony of his emotional distress." Tab 4, RE-45, ROA.7284, Opinion.

First, contemporaneous medical evidence objectively corroborated Plaintiff's injury. After experiencing chest tightness and pain radiating to his back, Plaintiff sought emergency medical treatment because he believed he may be having a heart attack. *See* ROA.2684:21-2685:20, Espinoza Depo.; ROA.1358-77, Plaintiff's Medical Records. The medical records documented that Plaintiff's symptoms had persisted for a period of approximately three weeks. ROA.1358-77, Plaintiff's Medical Records. Testimony from Plaintiff and Espinoza clearly and explicitly linked the emergency room visit with a growing progression of Plaintiff's medical symptoms caused by the circumstances surrounding Experian's

inaccurate reporting and no other source. ROA.1680:14-1681:13, Plaintiff's Depo.; ROA.2638 ¶¶ 6-9, Espinoza Decl.; ROA.2684:17-2685:20, ROA.2686:15-2688:8, Espinoza Depo.

Second, Plaintiff provided independent corroboration of his damages. Espinoza provided her own account of the day of the emergency room visit and the several weeks leading up to it. ROA.2684:17-2685:20, Espinoza Depo. She also observed that, after Plaintiff discovered and began to correct Experian's inaccurate reporting, he struggled to sleep, tossed and turned, awoke during the night, and began grinding his teeth. ROA.2687:25-2688:8, ROA.2689:4-10, Espinoza Depo. She further observed that Plaintiff suffered from visible stress, anxiety, exhaustion, and frustration as his efforts to correct Experian's inaccurate reporting continued. ROA.2711:6-16, ROA.2714:13-19, Espinoza Depo.; ROA.2638-39 ¶¶ 7-12, 14-15, Espinoza Decl. Plaintiff's mortgage loan originator, Jay Jones, testified that he observed Plaintiff's distress during a telephone conversation when he told Plaintiff that the Rushmore Account may interfere with his mortgage application by necessitating manual underwriting. ROA.6421-22 ¶¶ 7-8, Jones Decl.

Third, Plaintiff provided sufficiently articulated testimony which

20

supplied context for his independently corroborated emotional distress. Plaintiff described recurring headaches, sleeplessness multiple nights per week, a racing heart, sweaty palms, nausea, mental fatigue, mental fogginess, an inability to function at his normal capacity, anxiety caused by losing control over the information Experian was communicating about him, and the humiliation of describing to others that the mortgages and their payment histories belonged to his parents, not him. ROA.1602:4-1603:22, ROA.1604:4-1606:25, ROA.1621:2-1623:9, ROA.1649:7-1651:1, Plaintiff's Depo. These were specific, detailed descriptions of the nature, physical manifestations, duration, and cause of Plaintiff's distress rather than generalized labels offered without support.

**The district court acknowledged all this evidence,** expressly finding that Plaintiff had presented evidence of mental pain and anxiety, recurring headaches, physical symptoms, severe embarrassment, impaired functioning, sleeplessness, and the feeling that Plaintiff's life had been placed "on pause." Tab 4, RE-41, ROA.7280, Opinion. The district court recognized the existence of "affidavits and corroborating testimony," and acknowledged that the record contained "specific

evidence and corroborating testimony of [Plaintiff's] emotional distress."
*Id*. at Tab 4, RE-41 ROA.7280, RE-45 ROA.7284. Thus, the district court did not identify a deficiency of evidence under *Cousin*. Instead, it rejected otherwise sufficient evidence because the court did not believe it.

### C. The district court improperly made credibility determinations and resolved disputed issues of fact in Experian's favor.

In the district court's view, Plaintiff's emotional distress arose from his decline in creditworthiness, and, because the district court concluded Plaintiff had not actually suffered any decline in creditworthiness, it therefore held "no reasonably [*sic*] jury could believe that an incorrect item on a credit report that helped the individual's credit score caused emotional distress." Tab 4, RE-41-42, ROA.7280-81, Opinion. The district court's decision was erroneous for two independent reasons. First, it improperly made credibility determinations in rejecting Plaintiff's extensive evidence of emotional distress damages. Second, it improperly resolved inferences in Experian's favor.

At summary judgment, a court may not decide which witnesses are believable, weigh competing evidence, or select among reasonable inferences. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the

22

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Thus, the question at summary judgment is not whether a district court personally finds a party's evidence persuasive, but whether a reasonable jury could **credit** it. *Id.* at 249, 255.

The district court made its determination based on a misapplication of *Scott v. Harris*, 550 U.S. 372 (2007). In *Scott*, video evidence objectively disproved a plaintiff's description of a police pursuit, and the Supreme Court held a district court may disregard a nonmovant's testimony when objective evidence so "blatantly contradicts" it that no reasonable jury could possibly accept it. *Id.* Since then, this Court has repeatedly confined *Scott* to that unusual circumstance.

In *Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021), this Court emphasized *Scott* was "an exceptional case with an extremely limited holding," rather than an invitation for district courts to make improper credibility determinations whenever some evidence casts doubt on a nonmovant's testimony. *Id.* at 410. Recognizing that the standard set forth in *Scott* was "difficult" and "demanding," this Court clarified that district courts must follow standard summary judgment rules unless

"the record eliminates **any** feasible claim that the nonmovant's account of events is true." *Id.* (emphasis added). Similarly, in *Byrd v. City of Bossier*, 624 F. App'x 899 (5th Cir. 2015), this Court emphasized the limitations of *Scott*, holding a district court errs when it disregards testimony even if other evidence "**tends** to discredit […] [but] does not blatantly contradict it." *Id.* at 904 (emphasis in original). These holdings, along with others from this Court, make clear *Scott* is applicable only in very limited circumstances where objective evidence blatantly contradicts testimony. *See also Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 729-30 (5th Cir. 2018); *Bailey v. Ramos*, 125 F.4th 667, 676 (5th Cir. 2025); *cf. Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 458 (5th Cir. 2024) (holding that disregarding a sworn affidavit based on other contradictory evidence is "likely an abuse of discretion").

Other circuits have likewise rejected efforts to extend *Scott* beyond evidence that directly and conclusively contradicts disputed testimony. In *Joassin v. Murphy*, 661 F. App'x 558, 559 (11th Cir. 2016), the Eleventh Circuit held that despite declarations and medical records calling into question the plaintiff's account of events, because neither

24

"completely and clearly contradicted" the testimony, the competing evidence merely presented issues of credibility and weight to be resolved by a jury. The Eleventh Circuit later distilled the distinction in *Brooks v. Miller*, 78 F.4th 1267, 1278 (11th Cir. 2023), holding when contradictory evidence makes a plaintiff's story "merely unlikely yet does not necessarily contradict it," the standard summary judgment rules apply.

Here, the district court's conclusion commits the same error of law the district courts in *Aguirre, Byrd, Darden*, and *Bailey* committed. Nothing about the purported credit score benefit of the Rushmore Account "blatantly contradicts" Plaintiff's emotional distress damages. Accordingly, the district court erred by disregarding Plaintiff's extensive evidence of emotional distress.

The district court's reasoning creates a false equivalence between a consumer's credit score and the downstream consequences of inaccurate credit reporting. Assuming *arguendo* that the deletion of the Rushmore Account caused Plaintiff's credit score to decrease by five points, that fact would only establish that the scoring model chosen for that score – by Experian – assigned some favorable weight to some feature of the tradeline. However, it would not establish that reporting an inaccurate

mortgage with missed payments improved Plaintiff's creditworthiness in every respect, much less that Plaintiff could not experience emotional distress from having a mortgage he never opened – together with its history of missed payments – attributed to him and published to his prospective creditors.

Plaintiff's evidence shows that his emotional distress was not solely – or even principally – tied to a reduction in his numerical credit score. Plaintiff testified the inaccuracy caused anxiety because he had lost control over information being reported about him and because he felt that Experian was "lying" about his financial history. ROA.1604:4-15, Plaintiff's Depo. He described the humiliation of having to explain to others that the mortgage and associated late payments belonged to his parents. ROA.1602:4-1603:22, Plaintiff's Depo. He also explained that Experian's refusal to correct its inaccurate reporting left him "in limbo" and made him feel as though his life was "on pause" because he could not confidently pursue housing and credit while another person's mortgage remained in his file. ROA.1605:10-1606:5, Plaintiff's Depo. Those injuries arose from the presence and dissemination of false information, the uncertainty it created, and Experian's repeated failure to correct it, not

merely from the number displayed as Plaintiff's credit score. In other words, Plaintiff experienced the harm inherent in false credit reporting and thus *per se* recoverable in federal court. *See Losch*, 995 F.3d at 943 (reversing summary judgment in part because an FCRA plaintiff "needn't show that the false reporting caused his credit score to plummet; the false reporting itself was the injury. […] For the same reason, [an FCRA plaintiff] needn't show that Experian's false reporting of the mortgage would be worse for his credit score than true reporting […] the injury isn't the one to his credit score, but rather, the false reporting about his debt.")

The evidence surrounding Plaintiff's mortgage application confirms why the alleged scoring "benefit" did not eliminate adverse consequences caused by the erroneous account. Plaintiff's mortgage originator testified that Experian was the only one of three major credit bureaus that reported the Rushmore Account, and that the Rushmore Account was a potential problem likely requiring manual underwriting. ROA.6420-22 ¶¶ 5-8, Jones Decl. These concerns are consistent with the basic mechanics of mortgage underwriting. A credit score is only one of the components evaluated during the underwriting analysis; underwriting also evaluates a borrower's credit history, missed payments, debt-to-

income ratio, and monthly payments on other mortgage debts. *See* Fannie Mae Selling Guide § B3-2-03 (Feb. 5, 2025); Freddie Mac Single-Family Seller/Servicer Guide § 5401.2. Thus, a mortgage appearing on a consumer's credit report can affect underwriting independently of any effect – positive or negative – on a credit score: it may appear to impose some existing monthly mortgage obligation increasing the debt-to-income ratio, while its reported missed payments may separately impair the borrower's credit profile.

The district court's decision that Plaintiff's creditworthiness was unharmed as a result of the alleged five-point credit score differential could only be reached by inferring Plaintiff's ability to qualify for loans or housing depended only on a numerical credit score. However – as Jones will testify at trial – a lender may consider a variety of other creditworthiness factors that have nothing to do with the numerical credit score. A reasonable jury could infer that the inclusion of the Rushmore Account – which had a large balance and a history of late payments – on Plaintiff's credit file harmed Plaintiff's creditworthiness. A prospective lender or landlord could deny Plaintiff's credit applications either based on a debt-to-income analysis or on based on a determination

that Plaintiff had a history of routinely failing to make timely payments.

Finally, the district court overlooked the temporal disconnect between Experian's score comparison and Plaintiff's injuries. Plaintiff sought emergency medical treatment in March 2024, following the onset of anxiety, headaches, chest tightness, and other physical symptoms associated with learning of the inaccuracy and his efforts to correct the inaccurate reporting. *See* ROA.2684:21-2685:20, Espinoza Depo.; ROA.1358-77, Plaintiff's Medical Records. The score comparison on which the district court relied involved disclosures generated in June 2025 – **fifteen months later**. Tab 4, RE-42, ROA.7281, Opinion. A five-point movement observed in June 2025 does not disprove – much less "blatantly contradict" – Plaintiff's emotional condition in February and March 2024, his distress during the intervening year, or the embarrassment and uncertainty caused each time the false mortgage was disclosed or considered in connection with credit applications. The only conceivable way to conclude what effect the Rushmore Account would have had on Plaintiff's credit score in February and March 2024 would be to improperly draw **another** inference in Experian's favor to conclude that the Rushmore Account would have the same effect at that

time.

The district court never identified evidence that rendered Plaintiff's version of events impossible. Instead, it chose Experian's preferred inferences over Plaintiff's sworn testimony, corroborating witnesses, medical records, and evidence of real-world credit complications. This is precisely what Rule 56 forbids. An alleged five-point score change addressed only one numerical output from one scoring model – chosen by Experian – at one moment in time. It did not negate the stigma of another person's mortgage appearing in Plaintiff's credit file, the harms of the reported missed payments, the risk of increased debt obligations and manual underwriting, the humiliation of explaining the error to others, or the stresses caused by Experian's repeated refusal to correct the inaccuracy. Because nothing in the record "blatantly contradicts" Plaintiff's emotional distress evidence, the district court's decision to disbelieve that evidence was an impermissible credibility determination and reversible error.

**D.    The district court erred by failing to consider Plaintiff's evidence of other actual injuries.**

Apart from emotional distress, the record contained evidence of several other cognizable injuries the district court failed to address. The

FCRA permits recovery not only for emotional distress, but also for "injury to one's reputation and creditworthiness." *Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 436 (5th Cir. 2016) (quoting *Sapia v. Regency Motors of Metairie, Inc.*, 276 F.3d 747, 753 (5th Cir. 2002)).

Plaintiff presented evidence of reputational injury arising from Experian's publication of the inaccurate mortgage accounts to third parties, which the district court failed to address. In addition to supplying AppFolio with a consumer report that was used in evaluating Plaintiff's housing application, Experian admits it published consumer reports to numerous third parties containing one or both of the inaccurate accounts. ROA.2135:1-2136:3, Iwanski Depo. I (confirming companies listed under "hard inquiries" received consumer reports containing the Rushmore Account); ROA.3375, Plaintiff's Experian Report (showing hard inquiries).

Plaintiff testified about the embarrassment of being forced to explain to third parties that the mortgage and missed payments associated therewith did not belong to him. ROA.1602:4-1603:22, Plaintiff's Depo. Publication of inaccurate information implicates the same kind of reputational harms historically associated with defamation

31

and defamation *per se. Ramirez,* 594 U.S. at 433; *see also Losch,* 995 F.3d at 943. At minimum, the combination of these publications and Plaintiff's testimony created a factual question concerning reputational injury that could not be reduced to whether the tradeline increased or decreased a numerical credit score.

The district court also failed to address the evidence Plaintiff presented about the substantial loss of personal time that Experian caused. Following Experian's failure to correct the Rushmore Account during the First Dispute, Plaintiff spent months researching how best to dispute the inaccurate Rushmore Account effectively. ROA.1635:4-1636:6, Plaintiff's Depo. He then spent significant additional time locating and assembling documents necessary to prove the account belonged to his father, including identity documents, birth records, mortgage documents, and school records. ROA.1635:4-1636:6, ROA.1748:10-1750:15, Plaintiff's Depo.; ROA.2638-39 ¶¶ 10-11, Espinoza Decl. Experian nevertheless rejected the Second Dispute and failed to delete the Rushmore Account until well after suit was filed. The Fifth Circuit treats the considerable time a consumer spends attempting to resolve inaccurate reporting as relevant evidence of actual harm.

*Stevenson v. TRW Inc.*, 987 F.2d 288, 297 (5th Cir. 1993) ("Finally, Stevenson spent a considerable amount of time since he first disputed his credit report trying to resolve his problems with TRW.").

The district court also failed to address Plaintiff's evidence concerning his efforts to secure a mortgage. Plaintiff's mortgage loan originator testified that the Rushmore Account was specifically problematic and would likely cause manual underwriting rather than automated approval. ROA.6421-22 ¶¶ 7-8, Jones Decl. That evidence did not depend on proving whether Plaintiff ultimately received a formal denial; it showed the inaccurate reporting interfered with and complicated an actual credit transaction – an injury wholly separate from the five-point score comparison on which the court relied.

Ultimately, the district court did not analyze the reputational consequences of publishing another person's mortgage account containing missed payments as though it were Plaintiff's, the months of time Plaintiff spent attempting to correct the inaccuracy, or the evidence that the inaccuracy complicated and delayed his mortgage application. Because each category of harm was independently supported by record evidence, the district court could not collapse the damages inquiry into a

33

single, later five-point score fluctuation. The district court's failure to consider the full range of legally cognizable injuries – and whether a reasonable jury could find Experian caused them – was reversible error.

### E. Plaintiff provided sufficient evidence to permit a jury to find he suffered economic damages.

Finally, the district court erred by concluding Plaintiff lacked any evidence of economic damages. The district court's reasoning relied upon the lack of any documentary evidence, like a denial letter, showing a credit denial was based on Experian's reporting of the inaccurate accounts. Tab 4, RE-39-40, ROA.7278-79, Opinion. However, the Fifth Circuit does not require a denial letter or some specific form of documentary proof; a plaintiff need only proffer evidence from which a reasonable jury could find the inaccurate reporting affected a credit decision or otherwise caused financial harm. *Cameron v. Greater New Orleans Fed. Credit Union*, 713 F. App'x 238, 240 (5th Cir. 2018); *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316, 317 (5th Cir. 2012).

Plaintiff presented such evidence here. Plaintiff's mortgage loan originator identified the Rushmore Account by name as problematic for processing Plaintiff's mortgage application and likely necessitating manual underwriting. ROA.6420-21 ¶¶ 5-8, Jones Decl. The district court

failed to ever address Plaintiff's mortgage application and the complications the Rushmore Account caused for that application. However, Plaintiff's testimony, combined with Jones' testimony, permitted a jury to find Experian's inaccurate reporting caused concrete economic harm to Plaintiff.

## II. The district court erred by holding that Experian's matching procedures were reasonable as a matter of law because its decision failed to discuss Experian's post-dispute reporting procedures and because its decision drew inferences in Experian's favor and ignored evidence that proved Plaintiff's claims.

### A. To prove a violation of § 1681e(b), a plaintiff must show that a CRA reported inaccurate information because it failed to follow reasonable procedures to assure maximum possible accuracy.

Whenever a CRA prepares a consumer report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A plaintiff can prevail on a cause of action under § 1681e(b) by proving: (1) the defendant CRA included inaccurate information in a consumer report; (2) the inaccuracy resulted from the CRA's failure to follow reasonable procedures; (3) the consumer suffered injury; and (4) the injury was caused by the inclusion of the inaccurate information. *Hammer v. Equifax Info. Servs., LLC*, No. 3:18-CV-1502-C,

2019 WL 7602463, at *2 (N.D. Tex. Jan. 16, 2019), *aff'd*, 974 F.3d 564 (5th Cir. 2020).

Experian admits its reporting was inaccurate. The disputed question is whether that inaccuracy resulted from procedures consistent with what "a reasonably prudent person would do under the circumstances." *Cousin*, 246 F.3d at 368 (citing *Thompson v. San Antonio Retail Merch. Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982)). Because reasonableness requires balancing case-specific considerations, it is ordinarily a jury question and may be resolved on summary judgment only when the answer is beyond dispute. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001); *Cousin*, 246 F.3d at 368; *Cortez v. Trans Union, LLC,* 617 F.3d 688, 709 (3d Cir. 2010).

**B. The district court erred by granting summary judgment on Plaintiff's post-dispute § 1681e(b) claims without considering Experian's failure to identify or defend any reasonable post-dispute reporting procedures.**

Because § 1681e(b) applies "whenever" a CRA prepares a report, the reasonableness inquiry changes after the CRA receives notice that previously reported information may be inaccurate. After such notice, continued reporting may itself reflect a failure to follow reasonable

procedures. *Crabill*, 259 F.3d at 664 (citations omitted). Other courts have recognized that continued reporting of disputed information can constitute an independent violation of § 1681e(b). *See Losch*, 995 F.3d at 945; *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011) (holding after a consumer's dispute, "any subsequent report containing the same disputed information would, necessarily, not have been 'prepare[d] ... follow[ing] reasonable procedures to assure maximum possible accuracy.'"); *Lopez v. Experian Info. Sols., Inc.*, No. 19-CV-01954-RS, 2022 WL 1569285, at \*5 (N.D. Cal. May 18, 2022); *Crump v. Carrington Mortg. Servs., LLC*, No. 18 C 2302, 2019 WL 118490, at \*6-7 (N.D. Ill. Jan. 7, 2019); *Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 798-99 (N.D. Tex. 2014); *Graham v. CSC Credit Servs., Inc.*, 306 F. Supp. 2d 873, 878 (D. Minn. 2004).

The relevant undisputed facts are: Experian (1) admits it reported the Rushmore Account in Plaintiff's file and consumer reports for nearly a year after the Second Dispute; (2) ultimately deleted the Rushmore Account using only the documents and proof sent in the Second Dispute; (3) prepared post-dispute consumer reports about Plaintiff containing the Rushmore Account; and (4) has never proffered evidence of its post-

dispute reporting procedures, much less argued those procedures are reasonable. ROA.2135:1-2136:3, Iwanski Depo. I; ROA.3375, Plaintiff's Experian Report; ROA.2606:22-2608:4, Tab 6, RE-56-57, ROA.2609:19-2610:11, Hamilton Depo., 20:22-22:4, 23:19-24:11.

Here, the summary judgment record warrants judgment **in Plaintiff's favor** on the unreasonableness of Experian's post-dispute reporting procedures. At summary judgment, Plaintiff explicitly argued that Experian's **post-dispute** reporting procedures were unreasonable and violative of the FCRA. ROA.1525-26, Plaintiff's Motion for Partial Summary Judgment (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286-87 (7th Cir.1994) and *Losch*, 995 F.3d 937). For the avoidance of any doubt that Experian's post-dispute reporting procedures were specifically in contention, Plaintiff's concluding paragraph from the same section read:

> No reasonable jury could find that Experian "followed reasonable procedures to assure maximum possible accuracy" **in preparing subsequent consumer reports after receiving actual notice from Plaintiff** – including undeniable documentary proof – that the mortgage belonged to Plaintiff's father.

ROA.1528, Plaintiff's Motion for Partial Summary Judgment (emphasis added).

In response, Experian misconstrued Plaintiff's argument to merely suggest that "whenever a consumer brings a § 1681i claim, the § 1681e(b) claim somehow automatically merges into it." ROA.6463, n.14, Experian's Opposition to Plaintiff's Motion for Partial Summary Judgment. Because Experian apparently misunderstood Plaintiff's argument, it never provided any response arguing its post-dispute reporting procedures were reasonable, a fact which Plaintiff pointed out, in detail, in the Reply. ROA.6512-14, Plaintiff's Reply. Experian's Motion for Summary Judgment also failed to even address post-dispute reporting procedures, a fact which Plaintiff pointed out in detail in his Response. *See* ROA.4049-51, Plaintiff's Response to Experian's Motion for Summary Judgment.

When a party fails to respond to an argument raised in a summary judgment briefing, that failure constitutes abandonment of any contrary contention. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (a party may not "assent by silence" to the theory presented at summary judgment and later resurrect an unaddressed position).

Thus, when Experian failed to substantively respond to Plaintiff's argument, the proper course of action based on the summary judgment

record was judgment as a matter of law in Plaintiff's favor on the unreasonableness of Experian's post-dispute reporting procedures. At absolute minimum, the district court should have recognized that a genuine dispute of fact existed. When a plaintiff asserts a claim under § 1681e(b) and offers evidence to show that a CRA's procedures were unreasonable, if the CRA fails to provide proof of its procedures, it is error for a district court to grant summary judgment to the CRA. *Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409, 417 (4th Cir. 2001).

Here, Experian has **never** offered any evidence of its post-dispute reporting procedures, much less offered evidence showing how or why such procedures were reasonable. And, as noted above, Experian's admissions and other undisputed facts show that, for nearly a year after July 2024, Experian had notice of the inaccuracy in its reporting, did nothing about it, and continued to report the Rushmore Account in Plaintiff's consumer reports. At the very least, these undisputed facts created a jury question about whether Experian's post-dispute reporting reflected reasonable procedures to assure maximum possible accuracy.

When granting summary judgment to Experian on Plaintiff's § 1681e(b) claims, the district court failed to discuss – much less consider

– Experian's post-dispute reporting procedures at all. The district court failed to discuss those procedures despite: (1) Plaintiff explicitly raising the issue in his own motion; (2) Experian failing to respond to Plaintiff's argument; (3) Experian failing to raise the issue in its own motion; and (4) Plaintiff explicitly pointing out Experian's failures to the district court in Plaintiff's Response and Reply. *Compare* ROA.1528, Plaintiff's Motion for Partial Summary Judgment; ROA.6512-14, Plaintiff's Reply, ROA.4049-51; Plaintiff's Response to Experian's Motion for Summary Judgment *and* Tab 4, RE-36-38 ROA.7275-77, Opinion.,

Because Plaintiff provided evidence and argument on this issue, and because Experian failed to adequately address its post-dispute reporting procedures, it was error for the district court to deny Plaintiff's motion for summary judgment on that aspect of his § 1681e(b) claims. At bare minimum, it was error for the district court to grant summary judgment to Experian on that aspect of Plaintiff's § 1681e(b) claims when Experian never bothered to brief the issue.

**C.** **The district court erred when it adopted Experian's theory of the facts and ignored evidence that would have allowed a jury to find that Experian followed unreasonable reporting procedures.**

This was not a case where Plaintiff simply relied on the existence

of an inaccuracy and asked the district court to infer that Experian's procedures must have been unreasonable. Instead, Plaintiff identified the specific features of Experian's matching system that produced the mixed file at issue: Experian's matching algorithm, Find Consumer, associates incoming credit data with an existing consumer file based only on a matching name and address. ROA.2064:3-2065:4 , Iwanski Depo. I; ROA.2854:12-22, Sumida Depo. Plaintiff presented evidence from which a jury could conclude that this minimum threshold was inadequate to distinguish between family members who predictably shared a name and address. Because reasonable jurors could conclude Experian's procedures did not reasonably assure maximum possible accuracy, summary judgment was improper.

The district court reached the opposite conclusion by accepting Experian's generalized description of its matching system rather than viewing the evidence in the light most favorable to Plaintiff. The district court parroted assertions made in a declaration from an Experian employee, stating that Experian's database considers numerous identifying fields, must accommodate typographical errors and changes in consumer information, and must use flexible matching procedures to

avoid creating incomplete or fragmented files. Tab 4, RE-38, ROA.7277, Opinion. Worse still, the court's generalized description depended on a declaration that Plaintiff explicitly challenged as inadmissible and contradictory, an objection the court **never acknowledged or addressed**.

In its Response, Experian relied on a declaration from an Experian employee, Kimberly Cave[1] – which was prepared and filed in separate litigation – to offer a materially different description of Experian's matching requirements than Experian's 30(b)(6) witness provided in **this** case. *Compare* Tab 4, RE-30 ROA.7269, RE-38 ROA.7277, Opinion *and* ROA.1179-80, Cave Declaration. Plaintiff timely objected and pointed out that under binding Fifth Circuit precedent, Cave's "sham" declaration was inadmissible because it contradicted Experian's binding deposition testimony, constituted an improper (and untimely) attempt to supplement the record with evidence from another case, and contained unsupported conclusions lacking any identified evidentiary foundation.

---

[1] Cave appears as an "expert" witness in this case, despite being a long-time Experian employee with no colorable experience in the credit reporting industry outside of working for Experian as a career 30(b)(6) witness.

ROA.6506-08, Plaintiff's Reply. Despite Plaintiff's clear objections, the district court neither ruled on them nor reconciled Cave's assertions with contradictory testimony from Iwanski. Instead, the district court explicitly adopted the substance of Cave's disputed sham declaration, then used that adopted substance as a basis for finding Experian's procedures to be reasonable. Tab 4, RE-38, ROA.7277, Opinion.

Even accepting Experian's generalized need for flexibility, that premise does not answer the question presented. Plaintiff has never contended that Experian must require an exact match on all identifiers, nor that Experian must eliminate all flexibility from its system. Plaintiff has challenged the particular minimum threshold that Experian has selected, in which its algorithm can and does associate incoming credit information with a consumer file based on nothing more than a matching name and address. *See* ROA.2064:3-2065:4, Iwanski Depo. I; ROA.2854:12-22, Sumida Depo. Whether that threshold reasonably assured maximum possible accuracy – particularly in the context of matching a consumer sharing a name and former address with his father despite a DOB difference of 25 years – was a factual question for the jury, not one that can be resolved by merely observing that credit reporting

systems sometimes require flexibility.

The district court's statement that Experian "considers" multiple identifiers obscured Experian's actual procedure. Tab 4, RE-30, ROA.7269, Opinion. While it is true that Experian's algorithm **can** consider the identifiers, it is also undisputed that to match incoming credit data to a particular consumer file, Experian does not require anything more than a name and an address. ROA.2064:3-2065:4, Iwanski Depo. I; ROA.2854:12-22, Sumida Depo. Thus, the number of data fields that Experian's system is **capable** of evaluating does not establish the reasonableness of the data fields that Experian's procedures **actually** utilized in order to match the Rushmore Account to Plaintiff's credit file. By relying on the former to address the latter, the district court simply adopted Experian's characterization rather than viewing the evidence in the light most favorable to Plaintiff.

Nor did the absence of Plaintiff's father's SSN justify summary judgment. That absence meant Experian had no matching SSN connecting the Rushmore Account to Plaintiff, yet its procedure permitted the match to proceed anyway without requiring a compatible date of birth or another reliable identifier. A jury could reasonably

conclude that the absence of a discriminator like an SSN should trigger greater caution or require use of another discriminator like a DOB before attributing credit accounts to a consumer on only a name and address, rather than permit Experian to rely principally on identifiers it knows are commonly shared by parents and children. Indeed, a jury very recently came to precisely that conclusion in a case involving substantially the same factual premise. A jury recently heard evidence showing a consumer's credit file was mixed by Experian with his son's based on a match of only **first** name and address without any matching SSN or DOB and concluded that Experian's procedures – the very same procedures at issue here – negligently violated the FCRA. *Garcia Delgado v. Experian Info. Sols., Inc.*, No. 4:24-cv-00637, Docs. 194, 211 (E.D. Tex. Jul. 10, 2026).

Undisputed facts show Experian has long known that such minimal matching requirements create a heightened risk of excessive inaccuracy. In 1991, TRW – Experian's predecessor – signed separate but similar "Consent Orders" with the Federal Trade Commission ("FTC") and State Attorneys General in which TRW pledged to follow more stringent matching procedures to avoid mixed files; in particular, TRW promised

to continue its efforts "to improve its information gathering, storing, and generating systems to reduce the occurrence of Mixed Files" by modifying its software system "to accommodate and use, for matching and identification purposes, a Consumer's Full Identifying Information[.]" *F.T.C. v. TRW Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

Moreover, the entire consumer reporting industry has been repeatedly put on notice that the kind of matching procedures used here can violate the FCRA. In 2019, a CRA paid the Consumer Financial Protection Bureau ("CFPB") $8.5 million to settle a claim that alleged the CRA's matching procedures violated § 1681e(b) by failing to assure maximum possible accuracy when, inter alia, the CRA matched records – exactly as Experian did in this case – "based solely on a matching first and last name and matching address." *See CFPB v. Sterling Infosystems, Inc.*, Case No. 1:19-cv-10824-AJN, Doc. 1, ¶ 11; Doc. 11 (S.D.N.Y. 2019). In 2018, a CRA paid the FTC $3 million to settle a claim that the CRA used a "non-exact, match for first name, middle name, and date of birth." *See F.T.C. v. RealPage, Inc.*, Case No. 3:18-cv-02737-N, Docs. 1, 3-1 (N.D. Tex. 2018).

Experian admitted its loose matching procedures pose a particular

risk of inaccuracies for Hispanic consumers. Experian knows Hispanic consumers have culture-specific naming conventions. Tab 8, RE-65, ROA.2108:5-10, Iwanski Depo. The CFPB has specifically warned about name-only matching procedures in this context. *See* 12 CFR Part 1022, "Fair Credit Reporting; Name-Only Matching Procedures." CFPB. (November 3, 2021). Experian knows about this warning since it has a "department dedicated just to the CFPB" and takes "any kind of opinions [or] observations" of the CFPB "under advisement." ROA.1883:21-1884:6, Iwanski Depo. I. A jury could conclude that, given this known risk of error and the extensive history of notice that Experian received about mixed files, it was unreasonable for Experian to rely on name and address alone to match the Rushmore Account to Plaintiff.

Other unrefuted evidence would permit a jury to conclude that Experian's matching procedures were unreasonable. The two other national CRAs, Equifax and Trans Union, did not report the Rushmore Account in Plaintiff's credit reports. *See, e.g.*, ROA.1591:9-25, Plaintiff's Depo.; ROA.3409-10 ¶ 6, Plaintiff's Decl.; *see also* ROA.6421 ¶ 6, Jones Decl. Courts routinely hold that the absence of the same inaccuracy in the reporting from other CRAs supports an inference that a defendant

CRA's procedures were unreasonable. *See, e.g., Benjamin v. Experian Info. Sols., Inc.*, 561 F. Supp. 3d 1330, 1360 (N.D. Ga. 2021) ("Plaintiff has shown that Trans Union and Equifax did not report the same error related to the Account, which suggests that they have implemented stricter procedures to produce greater accuracy."); *Gadomski v. Equifax Info. Servs., LLC*, No. 2:17-CV-00670-TLN-AC, 2020 WL 3841041, at \*5 (E.D. Cal. July 8, 2020) ("Plaintiff's allegation that Experian and TransUnion did not make the same error also leads to a reasonable inference that Defendant failed to follow reasonable procedures in Plaintiff's case.").

Against all this evidence showing that its procedures were unreasonable, Experian countered only with minimal evidence and arguing generally about the need for flexibility in its reporting. *See* ROA.1149-51. To support this assertion Experian invoked agency material published in 2004. *See id*. Those agency publications described the challenges that CRAs face in matching consumers with items of information, but did not address – much less endorse – the kind of loose matching procedures that Experian followed here. Moreover, given the sweeping technological advances affecting the way in which computer

databases can be used and organized, agency guidance about how algorithms matched information more than two decades ago has minimal, if any, relevance to the question of reasonableness in this case.

As further support for its assertion of reasonableness, Experian touted its "extensive quality control procedures to help ensure the accuracy of the information reported to it by data furnishers." ROA.1148. But Experian's reference to these procedures is a red herring for two reasons. First, there is nothing in the evidentiary record to suggest that the mixed file at issue in this case was caused by any data furnisher; **all** evidence shows that Experian and Experian alone mixed Plaintiff's credit file with his father. Second, the "quality control" procedures Experian refers to have nothing to do with data accuracy and everything to do with ensuring that incoming data conforms to proper reporting formats. ROA.3254:4-9, Iwanski Depo. II. Nevertheless, the district court cited these "quality control" procedures in finding Experian's procedures were reasonable. Tab 4, RE-38, ROA.7277, Opinion.

The district court exacerbated its erroneous assessment of the evidence by misapplying caselaw. It relied upon out-of-circuit district court decisions in *Garrett v. Experian Info. Sols., Inc.*, 785 F. Supp. 3d

1077 (N.D. Fla. 2025)[2] and *Dunmore v. Experian Info. Sols. Inc.*, No. 2:24-CV-225-PPS-JEM, 2025 WL 2331036 (N.D. Ind. Aug. 13, 2025)[3] to conclude that the reasonableness of Experian's matching procedures was beyond dispute. Tab 4, RE-38, ROA.7277, Opinion. But those cases turned on a substantially different kind of matching error and different matching procedures than the ones at issue in this case. In both cases, Experian created mixed files by combining information from twins who shared matching personal information, addresses, and DOBs, and who had single-digit variations in their SSNs. *See Garrett*, 785 F. Supp. 3d at 1082; *Dunmore*, 2025 WL 2331036, at *2. Here, Experian never considered any SSN or DOB information when it associated Plaintiff with the Rushmore Account.

The district court relied upon these inapposite cases while ignoring two other decisions – cited by Plaintiff – where district courts concluded there were jury questions about reasonableness when the evidence showed that a CRA relied upon minimal matching requirements. Most notably, a district court rejected the exact argument Experian makes now

---

[2] The district court's ruling in *Garrett* is currently on appeal. *See Garrett v. Experian Info. Sols., Inc.*, No. 25-12194 (11th Cir.).

[3] *Dunmore* involved a decision denying a motion to compel discovery.

when Experian made it nearly two decades ago. In *Fahey v. Experian Info. Sols., Inc.*, 571 F. Supp. 2d 1082 (E.D. Mo. 2008), the furnisher provided Experian with a consumer's name and former address, but did not have the consumer's "[SSN], signature, or other identifying evidence." *Id.* at 1091. The *Fahey* court held that "[b]ased upon this evidence, a reasonable jury could conclude that Experian's reporting procedures were unreasonable, inasmuch as it failed to require sufficient identifying information about a consumer before listing accounts on his or her credit report." *Id.* In *Apocada v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220 (D.N.M. 2006), a court denied a CRA's motion for summary judgment, holding a CRA's "partial matching logic," which required a matching state of residence, a matching name, and a matching 7-out-of-9 digits of an SSN – far stricter than Experian's procedures here – created jury issues on reasonableness, including whether the CRA's violation was willful. *See generally, id.*

The district court did not determine that the record permitted only one conclusion; it simply selected Experian's narrative from sharply disputed evidence. It credited an objectionable declaration, treated Experian's abstract need for flexibility as dispositive, overlooked

evidence that name and address matching created a known, foreseeable risk of mixed files, and disregarded contrary practices by other CRAs and decisions finding similar procedures unreasonable. Plaintiff identified the precise mechanism that caused the error here and presented substantial evidence from which a jury could find Experian's safeguards – or lack thereof – insufficient and unreasonable. Because the reasonableness of Experian's procedures remained genuinely disputed, the district court could not resolve that issue in Experian's favor as a matter of law. Accordingly, this Court should reverse the grant of summary judgment on Plaintiff's § 1681e(b) claims and remand for a jury to determine whether Experian's procedures were reasonable.

III. **The district court erred in its rulings on Plaintiff's claim under § 1681i(a) because the undisputed facts showed that Experian never did more than conduct a data conformity review even though, for both disputes, it had more than enough information to warrant a more searching inquiry.**

A. **To prove a violation of § 1681i(a), a plaintiff must show that a CRA did not conduct a reasonable investigation after the plaintiff disputed the accuracy of information in its files or consumer reports.**

Section 1681i(a) identifies the basic requirements for a CRA's reinvestigation. When a consumer disputes the accuracy or completeness of the information in their credit file or consumer reports, the CRA must

reasonably reinvestigate the dispute and promptly delete, correct, or modify any information found to be inaccurate or incomplete. 15 U.S.C. § 1681i(a)(1)(A), (5)(A).

Although the FCRA does not define what constitutes a "reasonable reinvestigation," federal circuit courts agree that a reasonable reinvestigation must include more than a cursory inquiry. *See, e.g., Cortez*, 617 F.3d at 713; *see also Cushman v. Trans Union Corp.*, 115 F.3d 220, 224 (3d Cir. 1997) (citing *Henson*, 29 F.3d at 286-87 and *Stevenson*, 987 F.2d at 293). When a consumer alerts a CRA to the possibility that information from a furnisher may be inaccurate, the CRA's investigation must go beyond taking the furnisher's information at face value. *See Stevenson*, 987 F.2d at 293; *Henson*, 29 F.3d at 286-87.

This Court's opinion in *Stevenson* is instructive. There, TRW – Experian's predecessor – sent written forms to credit granting agencies that had supplied information about a consumer and relied on those credit grantors to make conclusive determinations of whether the information was accurate. *Stevenson*, 987 F.2d at 293. Holding that this was insufficient, the Court wrote: "[i]n a reinvestigation of the accuracy of credit reports [pursuant to § 1681i(a)], a credit bureau must bear some

responsibility for evaluating the accuracy of information obtained from subscribers." *Id.* This Court reasoned that such a result was the only one consistent with the language of § 1681i(a), which "places the burden of investigation squarely on" the consumer reporting agency. *Id.*

**B.  The district court's findings require judgment for Plaintiff on the Second Dispute once the district court's damages ruling is reversed.**

The district court has already held that Experian's reinvestigation of Plaintiff's Second Dispute was unreasonable; the only basis for rejecting that claim was its erroneous conclusion that Plaintiff failed to establish damages. Tab 4, RE-44-45, ROA.7283-84, Opinion. Once that damages ruling is reversed as it should be, no disputed issue remains as to Experian's violation of § 1681i(a). This Court should, therefore, direct entry of partial summary judgment for Plaintiff on liability arising from the Second Dispute and remand for determination of damages at trial.

**C.  Experian's admissions and the undisputed facts establish that Experian failed to reasonably reinvestigate the First Dispute.**

The undisputed facts and Experian's admissions demonstrate Experian also failed to reasonably reinvestigate the First Dispute. Federal courts have long held that, for furnishers and CRAs alike, responding to a well-founded dispute with nothing more than a data

conformity review is the quintessential "unreasonable investigation." *See, e.g.*, *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611 (6th Cir. 2012); *Daugherty v. Ocwen Loan Serv., L.L.C.*, 701 Fed. App'x. 246 (4th Cir. 2017). Here, the evidence shows that the only steps Experian took when reinvestigating the First Dispute was to send ACDVs to Rushmore and PennyMac, performing precisely the kind of data conformity review deemed unreasonable by courts.

The district court held that Experian's reinvestigation of the First Dispute was reasonable as a matter of law because Plaintiff "gave no information to put Experian on notice that an investigation beyond an ACDV was necessary." Tab 4, RE-43-44, ROA.7282-83, Opinion. But this conclusion contradicts both the law and the record evidence.

The district court's assessment of Experian's first reinvestigation disregards the rule that CRAs have a duty to conduct their own independent inquiry when they have some reason to doubt the accuracy of a furnisher's reporting. *Stevenson*, 987 F.2d at 293; *Henson*, 29 F.3d at 286-87. Additionally, and contrary to the district court's conclusion, Plaintiff **did** give Experian reason to look beyond Rushmore's ACDV

response. Plaintiff informed Experian that the Rushmore and PennyMac Accounts were mortgage accounts that did not belong to him. ROA.1841, 0:00-1:00, First Dispute. Had **any** Experian employee simply reviewed the DOB in Plaintiff's credit file and compared it to the original loan date in the Rushmore and PennyMac Accounts, that employee would have learned Plaintiff was only thirteen when the loan was originated. That alone is a sufficient reason to go beyond Rushmore's ACDV response.

Moreover, Experian admits that it is obvious that, based on information in each tradeline, the Rushmore and PennyMac Accounts relate to the same underlying mortgage loan. Tab 8, RE-63-64, ROA.2035:25-2036:21, Iwanski Depo. I. When Experian received ACDV responses from Rushmore and PennyMac that contained different DOBs and SSNs – despite both relating to the same underlying loan – that disjunction gave Experian another reason to question the accuracy of Rushmore's response. *See* Tab 14, RE-94, Doc. 117-4, App. 328, PennyMac ACDV Response; ROA.1844, First Rushmore ACDV Response.[4]

---

[4] Common sense should, at some point, play a role in the question of what is or is not reasonable. Plaintiff contacted Experian to dispute two related accounts and Experian (correctly) concluded that one of those accounts

Furthermore, Experian's admissions demonstrate that its reinvestigation of the First Dispute violated its own procedures. Three of Experian's own witnesses admitted that the dispute agent who handled Plaintiff's telephone call never asked Plaintiff any follow-up questions, even though Experian's procedures require as much. ROA.2032:21-2033:21, Iwanski Depo. I[5]; ROA.2624:14-2625:12, Hamilton Depo.; ROA.6143:22-6144:14; Tab 5, RE-49, ROA.6204:3-19, Avalos Depo. Those admissions are buttressed by the testimony of Plaintiff's expert, Douglas Hollon – who worked for Experian for fourteen years, amassing experience in handling consumer disputes and serving as Experian's 30(b)(6) in numerous cases – who opined that Experian's handling of the First Dispute was contrary to Experian's reinvestigation procedures and to industry standards. ROA.3355-57, Hollon Supplemental Expert Report.

Taken together, this evidence forecloses any conclusion that

---

did not belong to Plaintiff. The fact that not one Experian employee ever stopped to question why ownership disputes for two related accounts would have two different outcomes is surely unreasonable.

[5] After an off-the-record conversation with Experian's counsel during her deposition, Iwanski later changed her testimony to say that the dispute agent had not, in fact, failed to comply with Experian's procedures. ROA.2147:16-2152:9, Iwanski Depo. I.

Experian's reinvestigation of the First Dispute was reasonable as a matter of law. Plaintiff identified two related mortgage accounts as not belonging to him, the data in those accounts revealed an age impossibility, the furnishers returned conflicting identifiers, and Experian failed to follow its own procedures requiring further inquiry. Despite all of this, Experian did nothing beyond transmitting an ACDV and accepting Rushmore's response which was processed automatically, without any human involvement. A reasonable jury could readily find that this was not a reinvestigation at all, much less a reasonable one. The district court's contrary ruling, therefore, should be reversed.

IV. **The district court erred by concluding that no reasonable jury could find Experian's violations were willful because the district court treated the "willful misrepresentation or concealment" standard as the exclusive test for determining willfulness without applying the recklessness standard from *Safeco*.**

The district court erred when it granted summary judgment to Experian on the issue of willfulness because it treated the "willful misrepresentation or concealment" standard as an exclusive requirement for proving willfulness and failed to apply the recklessness standard set forth by the Supreme Court in *Safeco*.

In earlier FCRA decisions, this Court routinely described willful

violations through the language of "willful misrepresentations or concealments." *See, e.g.*, *Stevenson*, 987 F.2d at 293; *Cousin*, 246 F.3d at 374. That language addressed knowing, intentional noncompliance: conduct in which a defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others," often by misrepresenting or concealing information from a consumer. *Cousin*, 246 F.3d at 372 (citation omitted). The Supreme Court later clarified in *Safeco* that "willfully" under § 1681n encompasses two distinct forms of culpability: (1) knowing violations; and (2) violations committed in reckless disregard of the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-57, 68-71 (2007). In contrast to the former, the latter does not require proof a defendant deliberately misrepresented or concealed anything; instead, it requires conduct that creates an unjustifiably high risk of violating the statute either known or so obvious it should be known. *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

This Court's post-*Safeco* decisions recognize that dichotomy. In *Schultz v. HomeBridge Fin. Servs., Inc.*, No. 24-50193, 2025 WL 1467431, at *2 (5th Cir. May 22, 2025), the Court applied earlier cases to the knowing-and-intentional inquiry, explaining that such conduct

"typically" involves misrepresentation or concealment, then **separately** recognized that "[r]eckless disregard" of the FCRA also qualifies as willfulness under § 1681n. *Id*. Thus, while the "misrepresentations or concealment" language remains relevant to the knowing prong, it cannot be treated as a limitation on the **independent** recklessness prong established by *Safeco*.

The district court did not apply this two-pronged framework. Although the district court recited *Safeco*'s recklessness standard, it immediately stated that willfulness damages are "are appropriate **only** on evidence of 'willful misrepresentations or concealments.'" Tab 4, RE-35, ROA.7274, Opinion (emphasis added). It then rejected Plaintiff's claims for willfulness under § 1681e(b) because Plaintiff had not shown "that Experian made willful misrepresentations or concealments regarding his credit history, such as purposely excluding or ignoring his Social Security number to match the accounts." *Id*. at RE-36, ROA.7275. The district court similarly rejected Plaintiff's claims for willfulness under § 1681i because Plaintiff "presented no evidence that Experian acted with 'willful misrepresentations or concealments.'" *Id*. at RE-46, ROA.7285.

With respect to both §§ 1681e(b) and 1681i, the district court's reasoning addressed only the knowing prong. However, the absence of deliberate deception does not answer whether Experian acted **recklessly** by creating an unjustifiably high and obvious risk of violating the FCRA. As this Court recognized in *Schultz*, these are distinct inquiries. Accordingly, while the district court recited the standard from *Safeco*, the failure to evaluate Plaintiff's claims under the governing recklessness standard was an error.

Under the correct standard, the question was whether Experian's conduct created a risk of violating the FCRA substantially greater than the risk associated with ordinary carelessness. *Safeco*, 551 U.S. at 69-70. Plaintiff presented extensive evidence from which a jury could answer that question in the affirmative: Experian continued using matching procedures which created a known risk of mixed files, repeatedly failed to follow its own procedures designed to identify and remediate those mixed files, ignored documentary proof establishing that the mortgage belonged to Plaintiff's father, and imposed working conditions that encouraged cursory rather than meaningful reinvestigations. The district court did not examine whether that cumulative evidence showed

recklessness and limited its inquiry only to whether there was proof of intentional deception.

## D. A jury could find Experian recklessly violated § 1681i(a).

Under the correct *Safeco* standard, Plaintiff presented ample evidence from which a jury could conclude that Experian's reinvestigation failures created an unjustifiably high and obvious risk of violating § 1681i(a). The district court itself held that Experian's reinvestigation of the Second Dispute was unreasonable. Tab 4, RE-44-45, ROA.7283-84, Opinion. Plaintiff supplied identity documents, birth records, mortgage documents, and school records which conclusively demonstrated that the Rushmore Account belonged to his father and that Plaintiff was thirteen when the mortgage originated. Yet Experian ignored that evidence, transmitted another ACDV to Rushmore, and accepted Rushmore's unsupported verification. Experian's witnesses admitted that Plaintiff's documentation "met and surpassed" the requirements of its deletion procedure, that Plaintiff had done everything Experian required, and that the account should have been deleted. Tab 8, RE-66-69, ROA.2112:9-2115:9, Iwanski Depo. I. A jury could readily find that disregarding conclusive evidence while knowingly defaulting to

the same cursory process was reckless, not merely negligent.

Nor was the Second Dispute an isolated processing mistake. Experian failed to follow multiple procedures at multiple stages of both disputes. During the First Dispute, the telephone agent failed to ask required follow-up questions after Plaintiff stated that two mortgage accounts did not belong to him. ROA.2032:21-2033:21, Iwanski Depo. I; ROA.2624:14-2625:12, Hamilton Depo.; ROA.6143:22-6144:14, ROA.6203:22-6204:14, Tab 5, RE-49, Avalos Depo. When PennyMac returned identifying information that conflicted with Plaintiff's SSN and DOB, another agent failed to ████████████████████████ ████████████████ Tab 8, RE-61, ROA.2009:10-2010:5, Iwanski Depo. I; Tab 12, RE-89, Doc. 117-9, ACDV Procedures; ROA.6206:14-6211:11, Tab 5, RE-51, Avalos Depo. During the Second Dispute, a mail sorter failed to ██████████████████████████████████ and the dispute agent failed to apply two additional, separate procedures requiring either ██████████████████ Tab 8, RE-70, ROA.2125:1-18, Iwanski Depo. I; Tab 8, RE-66-69, ROA.2112:9-2115:9, Iwanski Depo. I; Tab 5, RE-49-51, ROA.6204:20-6206:13, Avalos Depo.; Tab 13, ER-91:22 – ER-92:17, Doc. 117-8. This sequence permitted an inference of repeated disregard for

procedures purportedly designed to carry out Experian's statutory duties. A district court has held that plaintiffs can demonstrate reckless conduct under the FCRA by showing a defendant "fail[ed] to follow its own FCRA reinvestigation procedures." *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1271-72 (S.D. Fla. 2009) (citations and footnotes omitted).

The surrounding evidence further permitted a jury to reject Experian's characterization of these failures as unrelated human errors. Experian requires its dispute agents to process approximately fifteen disputes per hour – one every four minutes – and imposed escalating discipline for failing to meet that quota. ROA.6092:18-6093:24, 6197:20-6198:1, Avalos Depo. Despite this demanding pace, Experian reviews only **eight** of the approximately 2,400 disputes processed by each agent every month for quality control; a total of 0.3%. ROA.6083:4-6084:1, Avalos Depo. A jury could find that Experian knowingly created a system in which agents were pressured to process complex disputes rapidly while almost none of their work received quality review, presenting an obvious risk that disputes would receive only cursory treatment.

Courts have rejected attempts to label repeated reporting failures "isolated human error" where the evidence permits the inference that the

defendant's system predictably produced the errors. *See Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1301-02 (11th Cir. 2019). Moreover, even if all these errors could somehow be characterized as isolated rather than systemic, a jury still must decide whether a "human error" constitutes a willful violation or mere negligence. *See Reeves v. Equifax Info. Servs.*, LLC, No. 2:09CV43KS-MTP, 2010 WL 2036661, at *12 (S.D. Miss. May 20, 2010) (holding a jury must determine whether an error constituted a single inadvertent mistake or an instance of reckless conduct); *see also Ricketson v. Experian Info. Sols., Inc.*, 266 F. Supp. 3d 1083, 1095-96 (W.D. Mich. 2017).

The district court resolved these inferences in Experian's favor, treating every procedural failure as individual mistakes disconnected from Experian's practices. But the question under *Safeco* is whether Experian's cumulative conduct created an unjustifiably high risk that consumers would not receive the meaningful reinvestigation § 1681i(a) requires. The conclusive documentation, repeated violations of distinct procedures, production quotas, minimal quality review, and Experian's continued reporting for nearly another year provided more than enough evidence for a jury to answer that question yes. Summary judgment on

the willfulness of Experian's § 1681i(a) violations should, therefore, be reversed.

**E.    A jury could find Experian recklessly violated § 1681e(b).**

Plaintiff also presented evidence that Experian continued using matching procedures that posed a known and obvious risk of creating mixed files. In 1991, Experian's predecessor entered consent orders requiring it to improve its systems to reduce mixed files and to "accommodate and use, for matching and identification purposes, a Consumer's Full Identifying Information." *F.T.C.,* 784 F. Supp. at 362-63. More than three decades later, Experian's procedures still permit incoming account information to be associated with a consumer based on nothing more than a matching name and address, without requiring either a matching SSN or a compatible DOB. ROA.2064:3-7, Iwanski Depo. I; ROA:12-22, Sumida Depo. A jury could certainly find that continuing to use this minimal threshold despite longstanding notice of the risks of mixed files reflected reckless disregard for Experian's obligation to assure maximum possible accuracy.

The district court discounted this evidence because Experian purportedly modified its system in 2008 and 2018. Tab 4, RE-36,

ROA.7275, Opinion. But the existence of later modifications did not establish that Experian eliminated – or even meaningfully addressed – these known risks caused by minimal matching. The current system still permits the exact conduct against which the earlier notice warned: attributing another person's account to a consumer without using identifying information necessary to sufficiently distinguish between the two. Whether the modifications adequately addressed that risk was therefore a disputed factual question. By treating the fact of modification as conclusive evidence of reasonableness, the district court impermissibly weighed Experian's evidence and drew the inference in its favor.

Other evidence reinforced the obviousness of the risk. Experian admits it understands Hispanic naming conventions can create particular matching complications, yet its procedures permit matching based on the two identifiers most likely to be shared by family members: name and address. Tab 8, RE-65, ROA.2108:5-10, Iwanski Depo. And neither Equifax nor Trans Union attributed the Rushmore Account to Plaintiff, permitting the inference that other national CRAs employed safeguards capable of avoiding the same error. *See, e.g.*, ROA.1590:9-25, Plaintiff's Depo.; ROA.3409-10 ¶ 6, Plaintiff's Decl.; *see also* ROA.6421 ¶

6, Jones Decl. This evidence allowed a jury to find not merely that Experian's procedure produced one inaccurate result, but that Experian knowingly retained a procedure presenting an obvious and unjustifiably high risk of confusing family members who shared common identifiers.

Nor could Experian invoke *Safeco* merely because no binding decision prescribed a specific matching formula. *Safeco* found no recklessness where the defendant adopted an objectively reasonable interpretation of ambiguous statutory text that had a foundation in the statute and had not been rejected by authoritative guidance. 551 U.S. at 69-70. Here, Experian identified no comparable statutory interpretation. Plaintiff challenged the factual reasonableness of a procedure that allowed a mortgage to be assigned without agreement on meaningful discriminators and despite known mixed file risks. The absence of a judicially mandated algorithm did not entitle Experian to disregard whether its chosen procedure created an obvious risk of violating § 1681e(b). Because the record permitted a jury to find that it did, summary judgment on willfulness was improper.

## CONCLUSION AND RELIEF REQUESTED

Experian has long known that matching by name and address only is inconsistent with the FCRA's mandate of maximum possible accuracy. Experian also knows or should know that reasonable reinvestigations take more than four minutes. But these policies and others led to a series of chronic errors in its report production and in its dispute reinvestigation. Because Plaintiff had substantial evidence to show that these errors constituted willful violations of the FCRA and that he was harmed by them, it was error for the district court to deny his motion for partial summary judgment and to grant summary judgment to Experian. Plaintiff asks this Court to reverse the district court's summary judgment order, to rule that Plaintiff is entitled to summary judgment on issues of liability, willfulness and damages, and to remand this case to the district court for further proceedings. In the alternative, Plaintiff asks this Court to rule that the summary judgment record presents jury questions regarding liability, willfulness, and damages.

**Respectfully submitted,**

*/s/ James Ristvedt*
James Ristvedt (AZ Bar No. 035938)
**CONSUMER JUSTICE LAW FIRM PLC**

70

8095 North 85th Way
Scottsdale, Arizona 85258
T: (480) 626-1956
E: jristvedt@consumerjustice.com

*Attorneys for Plaintiff – Appellant*
*Victor Manuel Ramirez Najera*

# CERTIFICATE OF FILING AND SERVICE

I, James Ristvedt, hereby certify that on July 22, 2026, I electronically filed the foregoing brief with the Clerk of Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Opposing counsel has therefore been served pursuant to 5th Cir. R. 25.2.5.

/s/ James Ristvedt
James Ristvedt
**CONSUMER JUSTICE LAW FIRM PLC**

*Attorneys for Plaintiff – Appellant
Victor Manuel Ramirez Najera*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), and 5th Cir. R. 32.2, because it contains 12,851 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point font named Century Schoolbook.

*/s/ James Ristvedt*
James Ristvedt
**CONSUMER JUSTICE LAW FIRM**

*Attorneys for Plaintiff – Appellant*
*Victor Manuel Ramirez Najera*