No. 26-10290

# In the United States Court of Appeals For the Fifth Circuit

VICTOR MANUEL RAMIREZ NAJERA,

*Plaintiff – Appellant,*

*v.*

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant – Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No. 4:25-cv-00443-P

**REPLY BRIEF OF PLAINTIFF-APPELLANT VICTOR MANUEL RAMIREZ NAJERA**

James Ristvedt (AZ Bar No. 035938)
**CONSUMER JUSTICE LAW FIRM PLC**
8095 North 85th Way
Scottsdale, Arizona 85258
T: (480) 626-1956
E: jristvedt@consumerjustice.com
*Attorneys for Plaintiff – Appellant Victor Manuel Ramirez Najera*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities described in 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiff – Appellant:
   Victor Manuel Ramirez Najera

2. Defendant – Appellee:
   Experian Information Solutions, Inc.

3. Counsel for Plaintiff – Appellant:
   James Ristvedt, Consumer Justice Law Firm PLC
   David Chami, Consumer Justice Law Firm PLC
   Youssef Hammoud, The Credit Attorney, Inc.
   Daniel Ciment, Ciment Law Firm, PLLC

4. Counsel for Defendant – Appellee:
   William M. Jay, Goodwin Procter LLP
   Allison Allman, Jackson Walker

*/s/ James Ristvedt*

James Ristvedt (AZ Bar No. 035938)
**CONSUMER JUSTICE LAW FIRM PLC**
*Attorneys for Plaintiff – Appellant*
*Victor Manuel Ramirez Najera*

## TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS ........................................i

TABLE OF CONTENTS ...........................................................................ii

TABLE OF AUTHORITIES.................................................................. iii

INTRODUCTION..........................................................................................1

ARGUMENT ..................................................................................................2

I. The summary judgment record was sufficient to establish that Plaintiff was entitled to some damages as a result of Experian's failure to fulfill its duties under 15 U.S.C. §§ 1681e(b) and 1681i(a). ..2

A. Plaintiff presented sufficient evidence of compensable emotional distress..........................................................................................2

B. Plaintiff had sufficient evidence to prove that he suffered damages from an injury to his reputation for creditworthiness. .....11

C. The record also established mortgage-related harm and substantial time lost correcting Experian's inaccurate reporting. ..13

II. Experian's alleged need for flexible matching does not establish the reasonableness of its initial or post-dispute reporting procedures. 15

A. Experian's claimed need for matching flexibility does not establish the reasonableness of its name and address only matching procedures. ..................................................................................16

B. Section 1681e(b) independently governs Experian's post-dispute reporting, and Experian failed to establish that its continued reporting was reasonable. ..............................................................21

III. Experian does not dispute that its second reinvestigation was unreasonable, and the evidence also presented a jury question concerning its first reinvestigation. ...................................................25

IV. The district court applied an improperly restrictive willfulness standard and disregarded evidence permitting a jury to find that Experian recklessly violated the FCRA. .......... 29

CONCLUSION AND RELIEF REQUESTED .......... 36

## TABLE OF AUTHORITIES

### Cases

*Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021) .......... 5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 6

*Anderson v. Wells Fargo Bank, N.A.*, No. 3:16-CV-2514-N, 2018 WL 3426269 (N.D. Tex. July 13, 2018) .......... 9

*Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432 (5th Cir. 2016) .......... 12

*Barron v. Equifax Info. Servs., L.L.C.*, 802 F. App'x 161 (5th Cir. 2020) .......... 29

*Cameron v. Greater New Orleans Fed. Credit Union*, 713 F. App'x 238 (5th Cir. 2018) .......... 35

*Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800 (7th Cir. 2023) .......... 32

*Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) .......... 16

*Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001) .......... 22

*Crabill v. Trans Union, LLC*, 259 F.3d 662 (7th Cir. 2001) .......... 24

*Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409 (4th Cir. 2001) .......... 26

*F.T.C. v. TRW Inc.*, 784 F. Supp. 361 (N.D. Tex. 1991) .......... 37

*Fahey v. Experian Information Solutions, Inc.*, 571 F. Supp. 2d 1082 (E.D. Mo. 2008) .......... 19, 20

*Farmer v. Brennan*, 511 U.S. 825, 836 (1994) .......... 33

*Garcia Delgado v. Experian Information Solutions, Inc.*, 2026 WL 3071947 (E.D. Tex. Oct. 14, 2026) .......... 4

*Garrett v. Experian Information Solutions, Inc.*, 785 F. Supp. 3d 1077 (N.D. Fla. 2025) .......... 21

*Graham v. CSC Credit Servs., Inc.*, 306 F. Supp. 2d 873 (D. Minn. 2004) ........ 24
*Hammer v. Sam's E., Inc.*, 754 F.3d 492 (8th Cir. 2014) ........ 28
*Hitt v. Connell*, 301 F.3d 240 (5th Cir. 2002) ........ 3, 4
*Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021) ........ 13, 24
*McClelland v. Experian Information Solutions, Inc.*, No. 04 C 5686, 2006 WL 2191973 (N.D. Ill. July 28, 2006) ........ 20, 21
*Migis v. Pearle Vision, Inc.*, 135 F.3d 1041 (5th Cir. 1998) ........ 4
*Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F.Supp. 962 (S.D.Ohio 1983) ........ 24
*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ........ 28
*Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996) ........ 9
*Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986) ........ 29
*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ........ 32, 33, 38
*Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144 (11th Cir. 2024) ........ 28
*Sapia v. Regency Motors of Metairie, Inc.*, 276 F.3d 747 (5th Cir. 2002) ........ 12
*Schultz v. HomeBridge Fin. Servs., Inc.*, No. 24-50193, 2025 WL 1467431 (5th Cir. May 22, 2025) ........ 33
*Scott v. Harris*, 550 U.S. 372 (2007) ........ 2, 5, 6
*Shaunfield v. Experian Information Solutions, Inc.*, 991 F. Supp. 2d 786 (N.D. Tex. 2014) ........ 25
*Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316 (5th Cir. 2012) ........ 15
*Stevenson v. TRW Inc.*, 987 F.2d 288 (5th Cir. 1993) ........ 9, 16, 24, 29
*Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509 (5th Cir. 1982) ........ 9
*Vadie v. Mississippi State Univ.*, 218 F.3d 365 (5th Cir. 2000) ........ 3, 4
*Wagner v. BellSouth Telecommunications, Inc.*, 520 F. App'x 295 (5th Cir. 2013) ........ 3, 4
*Westbrook v. Equifax Info. Servs., LLC*, No. 8:23-CV-477-MSS-LSG, 2025 WL 399940 (M.D. Fla. Feb. 5, 2025) ........ 36

*Williams v. First Advantage LNS Screening Sols. Inc*, 947 F.3d 735 (11th Cir. 2020) .......... 35

**Statutes**

15 U.S.C. § 1681e(b) .......... 2, 26
15 U.S.C. § 1681i(a)(1)(A) .......... 26
15 U.S.C. § 1681n(a)(1)(A) .......... 28

## INTRODUCTION

In 2009, Plaintiff-Appellant Victor Ramirez Najera ("Plaintiff") was in eighth grade. Defendant-Appellee Experian Information Solutions, Inc. ("Experian") later reported that his father's mortgage, opened that year, belonged to him. When he objected, Experian asked the mortgage servicers to verify their data and kept reporting the loan. When he returned with a birth certificate, school records, and mortgage documents identifying his father, Experian verified it again. The account remained for nearly another year, until litigation prompted Experian to finally remove it using the very documents he had already submitted.

What is striking here is not just the error; it is the confidence with which Experian and the district court treated that sequence as legally inconsequential. The court discounted detailed, corroborated emotional distress because of an alleged credit score change, accepted general assurances about automated matching, and demanded intentional deception to establish willfulness. A credit score cannot determine whether a person suffered humiliation, and a description of what software **can** do does not resolve what Experian **actually** did. Those are questions the record reserved for a jury, and this Court should reverse.

## ARGUMENT

**I. The summary judgment record was sufficient to establish that Plaintiff was entitled to some damages as a result of Experian's failure to fulfill its duties under 15 U.S.C. §§ 1681e(b) and 1681i(a).**

A. Plaintiff presented sufficient evidence of compensable emotional distress.[1]

1. *Plaintiff's evidence of emotional distress satisfied the Fifth Circuit's evidentiary standards.*

Experian defends the district court's emotional distress ruling by mischaracterizing the governing standards. *See* Experian's Brief at 24-29. Experian suggests that feelings of anger, frustration, and embarrassment are categorically noncompensable, that emotional distress must be independently corroborated, and that the district court could discredit Plaintiff's testimony under *Scott v. Harris*, 550 U.S. 372 (2007), based on evidence the effect to Plaintiff's credit score. Each argument fails.

[1] Experian begins by asserting that Plaintiff "confuses the issues" because "damages only matter if [Plaintiff] proves a FCRA violation *first*." Experian's Brief at 21 (emphasis in original). Experian is confused. Damages are an element of claims for negligent violations of both §§ 1681e(b) or 1681i. It is a logical impossibility to prove a negligent violation of these sections of the FCRA **before** proving damages.

First, Experian confuses the requirement of **specificity** with a requirement of extraordinary **severity**. While ordinary "hurt feelings, anger and frustration" alone are insufficient, this Court focuses on whether there is evidence of a "specific discernable injury" establishing the nature and extent of the plaintiff's distress. *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002); *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 376 (5th Cir. 2000) (citation and internal quotation marks omitted). Indeed, the relevant distinction is between conclusory descriptions of emotional distress and specific evidence demonstrating a genuine injury. *Wagner v. BellSouth Telecommunications, Inc.*, 520 F. App'x 295, 298 (5th Cir. 2013). Nothing in these decisions serves to categorically exclude compensation for anxiety, embarrassment, or frustration when the plaintiff establishes their nature, extent, and connection to the defendant's misconduct with specificity.

Second, Experian is decidedly incorrect when it states that "any evidence of emotional distress must be corroborated." Experian's Brief at 25. This Court has repeatedly held the opposite. *Hitt*, 301 F.3d at 250 (emotional distress does not require corroboration); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (same); *Garcia Delgado*

*v. Experian Information Solutions, Inc.*, 2026 WL 3071947, at *4 (E.D. Tex. Oct. 14, 2026)[2] (citing *Migis*) (same). Instead, a "plaintiff's own testimony, **standing alone**," is sufficient when it is "particularized and extensive" enough to establish a genuine injury. *Hitt*, 301 F.3d at 250 (emphasis added). Again, Experian confuses the standard. Experian's reliance on *Brady*, *Vadie*, and *Wagner* establishes only that vague or conclusory testimony is insufficient – not that independent corroboration is an absolute necessity.[3] In any event, Plaintiff presented substantial corroborating evidence.

Third, Experian misapplies *Scott* to defend the district court's credibility determinations. According to Experian, evidence that the

---

[2] Experian attempts to distinguish *Garcia Delgado* because the matching here involved a matching first, middle, and "initial" last name. Experian's Brief at 40-41. But **as Experian knows**, *Garcia Delgado* also involved a father and son with identical first and middle names, partially matching surnames, a shared address, and differing SSN availability. *See generally Garcia Delgado*, 2026 WL 3071947. Experian also speculates that the verdict may be overturned. Experian's Brief at 40-41. Yet its post-trial motions have since been denied, and none challenged the jury's finding that Experian's matching procedures were unreasonable.

[3] Experian's brief discussion of *Picou* is puzzling. Experian asserts that *Picou* does not support Plaintiff's because this Court ultimately held that the specific testimony in that case was insufficient. Experian confuses the legal standard articulated by a decision with the result reached when **applying** that standard to a particular evidentiary record.

inaccurate account purportedly improved Plaintiff's credit score conclusively established that the error was "objectively inconsequential," rendering Plaintiff's claimed distress unbelievable. Experian's Brief at 27. But *Scott* permits courts to disregard testimony only when objective evidence so "blatantly contradict[s]" it that no reasonable jury could believe the witness. *Scott*, 550 U.S. at 380. As this Court has explained, that exceptional rule applies only when "the record eliminates **any feasible claim** that the nonmovant's account of events is true." *Aguirre v. City of San Antonio*, 995 F.3d 395, 410-11 (5th Cir. 2021) (emphasis added).

Nothing about Experian's credit score evidence satisfies that demanding standard. That evidence only purportedly showed that Plaintiff's FICO score declined by five points when the inaccurate account was removed in June 2025. It did not establish the account's effect on Plaintiff's creditworthiness in 2023 or 2024, much less disprove that Plaintiff experienced genuine distress from having his father's mortgage incorrectly attributed to him, repeatedly attempting to correct that error, and explaining the inaccuracy to others. Even assuming *arguendo* that the account improved Plaintiff's credit score, that financial effect is

entirely consistent with Plaintiff's testimony that its inaccurate reporting caused humiliation, anxiety, and physical symptoms. Thus, Experian's credit score evidence does not contradict Plaintiff's testimony **at all**, much less establish the blatant contradiction required by *Scott*. The district court, therefore, erred by using that evidence to make a credibility determination reserved for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

The record in fact contained far more than generalized assertions of distress. Plaintiff described recurring headaches, sleeplessness, a racing heart, sweaty palms, nausea, fatigue, impaired functioning, anxiety, and humiliation, and he explicitly described how these symptoms arose from Experian's inaccurate reporting and his unsuccessful attempts to correct it. ROA.1602:4-1603:22, ROA.1604:4-1606:25, ROA.1621:2-1623:9, ROA.1649:7-1651:1, Plaintiff's Depo. His fiancée independently corroborated his symptoms, describing disrupted sleep, teeth grinding, visible stress, and physical manifestations of anxiety. ROA.2684:17-2685:20, ROA.2687:25-2688:8, ROA.2711:6-16, ROA.2714:13-19, ROA.2689:4-10, Espinoza Depo.; ROA.2638-39 ¶¶ 7-12, 14-15, Espinoza Decl. Further, contemporaneous medical records

documented the symptoms that prompted Plaintiff's March 2024 emergency room visit. ROA.1358-77, Plaintiff's Medical Records. Even Experian itself acknowledges that this visit "undeniably shows distress." Experian's Brief at 25.

The district court expressly acknowledged that Plaintiff had presented "specific evidence and corroborating testimony of his emotional distress." Tab 4, RE-45, ROA.7284, Opinion. Having recognized that evidence, the court could not reject it merely because it considered Plaintiff's distress disproportionate to the alleged credit score consequences. Whether the evidence was credible and what damages it justified were questions for the jury, not grounds for summary judgment.

2. *Plaintiff had sufficient evidence to prove that Experian's FCRA violations were a substantial factor in causing his emotional distress.*

Experian argues that Plaintiff cannot establish causation because of "the relative timing of events." Experian's Brief at 21-23. It maintains that the initial reporting and first reinvestigation were lawful and that its admittedly deficient second reinvestigation could not have caused Plaintiff's earlier injuries. *Id.* But this argument overlooks both Plaintiff's challenges to Experian's earlier conduct and the substantial

evidence of emotional distress that continued – and was exacerbated – after Experian rejected Plaintiff's second dispute.

Plaintiff does not claim Experian's unreasonable second reinvestigation caused injuries that already occurred. But Experian's initial reporting and first reinvestigation are independently challenged on appeal, and reversal of the district court's liability rulings would permit recovery for earlier attributable injuries. Moreover, Experian incorrectly assumes that, to establish damages arising from the second reinvestigation, Plaintiff must identify entirely new symptoms of emotional distress that first appeared after August 2024. Neither the FCRA nor this Court's precedent imposes such a requirement.

FCRA causation requires evidence that the violation was a substantial factor in producing compensable harm. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 968 (3d Cir. 1996); *Anderson v. Wells Fargo Bank, N.A.*, No. 3:16-CV-2514-N, 2018 WL 3426269, at *6 (N.D. Tex. July 13, 2018). In *Stevenson v. TRW Inc.*, 987 F.2d 288, 297 (5th Cir. 1993), this Court distinguished earlier injuries but upheld damages for the plaintiff's "mental anguish over his lengthy dealings with TRW after he disputed his credit report." Likewise, *Thompson v. San Antonio Retail*

*Merchants Ass'n*, 682 F.2d 509, 514 (5th Cir. 1982), upheld emotional distress damages where inaccuracies persisted for while the plaintiff "spent months pressing SARMA to correct its mistakes."

The record here establishes precisely that kind of continuing injury. Plaintiff submitted his second dispute in July 2024, providing documentary proof that the mortgage belonged to his father. His fiancée testified that, after submitting those documents, Plaintiff became noticeably calmer because he believed Experian would finally correct the error. ROA.2639 ¶ 12, Espinoza Decl. But when Experian again verified the mortgage in August 2024, Plaintiff's distress returned. Espinoza personally observed Plaintiff become visibly upset upon reading the dispute results, raise his voice in unusual frustration, and repeatedly express that he did not know what else he could do to prove the mortgage was not his. ROA.2639 ¶¶ 13-14, Espinoza Decl. Thereafter, Plaintiff again became withdrawn and spent substantial time after work researching how to remove the mortgage. ROA.2639 ¶ 15, Espinoza Decl.

Nor did Plaintiff's earlier physical and emotional symptoms disappear prior to the second reinvestigation. Espinoza expressly confirmed that Plaintiff's chest symptoms, though less frequent around

July 2024, persisted thereafter, ultimately ceasing "a few months" prior to her deposition in November 2025. ROA.2687:25-2688:11, Espinoza Depo. Plaintiff likewise testified that his recurring headaches and sleeplessness continued through his September 2025 deposition – well after the unreasonable August 2024 reinvestigation. ROA.1649:7-18, ROA.1650:16-1651:1, Plaintiff's Depo. He further testified that he continued to experience stress and anxiety attributable to the inaccurate reporting and his unsuccessful disputes. ROA.1625:8-20, ROA.1626:7-1627:21, Plaintiff's Depo. Meanwhile, Experian continued associating Plaintiff with his father's mortgage until June 11, 2025 – nearly eleven months after Plaintiff submitted the documentary proof establishing that the account was not his. *See* Tab 6, RE-53-57, ROA.2606:22-2610:11, Hamilton Depo.

Thus, this is not a case where Plaintiff relies exclusively on injuries predating the challenged violation. The record contains contemporaneous, eyewitness testimony describing a renewed episode of distress immediately following Experian's second reinvestigation, corroborating testimony that his symptoms persisted thereafter, and Plaintiff's own testimony detailing their continued effects. A reasonable

jury could find that Experian's refusal to correct the inaccuracy in August 2024 prolonged and exacerbated Plaintiff's already existing emotional distress, even if that distress originally arose from Experian's earlier misconduct. Because the evidence permits a finding that Experian's second reinvestigation was a substantial factor in causing compensable emotional harm after August 2024, the district court erred in removing that question from the jury.

B. Plaintiff had sufficient evidence to prove that he suffered damages from an injury to his reputation for creditworthiness.

Experian argues that Plaintiff cannot recover for reputational injury without proving additional economic or emotional harm. Experian's Brief at 30-31. But this argument misreads controlling Fifth Circuit precedent. This Court has expressly recognized that the FCRA permits recovery "for humiliation and mental distress **and** for injury to one's reputation and creditworthiness." *Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 435-36 (5th Cir. 2016) (quoting *Sapia v. Regency Motors of Metairie, Inc.*, 276 F.3d 747, 753 (5th Cir. 2002)) (emphasis added). Contrary to Experian's assertions, *Bacharach* **did not** "immediately clarif[y]" that reputational injuries must be accompanied

by emotional distress; the Court's subsequent discussion concerned the evidentiary requirements for proving emotional distress, not reputational harm. *Id.* Further, while *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021) addressed Article III standing, its recognition that publication of an inaccuracy causes injuries analogous to defamation further confirms the distinct nature of reputational harm.

Moreover, Plaintiff did not rely merely on the existence of inaccurate information in his credit file. Experian published consumer reports containing the inaccurate mortgage accounts to numerous third parties, including prospective creditors. ROA.2135:1-2136:3, Iwanski Depo. I; ROA.3375, Plaintiff's Experian Report. In April 2025, Plaintiff's mortgage loan originator personally reviewed his Experian report, identified the falsely attributed Rushmore Account and its history of missed payments as problematic, and advised Plaintiff that the account would likely require manual underwriting of his mortgage application. ROA.6421-22 ¶¶ 6-8, Jones Decl. Plaintiff also testified about the humiliation of having to explain to others that the mortgage and its missed payments belonged to his parents, not him. ROA.1602:4-1603:22, Plaintiff's Depo.

Thus, the record contains evidence not merely of Experian's inaccurate reporting, but of its actual dissemination to third parties, its effect on how a mortgage professional evaluated Plaintiff's creditworthiness, and the humiliation Plaintiff experienced in explaining the false information to others. This evidence was more than sufficient to permit a reasonable jury to find compensable injury to Plaintiff's reputation for creditworthiness, regardless of any impact on his credit score or the existence of any specific credit denial.

### C. The record also established mortgage-related harm and substantial time lost correcting Experian's inaccurate reporting.

Experian argues that Plaintiff cannot recover economic damages without proving a credit denial or increased borrowing costs and that Plaintiff raised damages related to his mortgage application for the first time on appeal. Experian's Brief at 31-33. Experian is wrong. Plaintiff expressly argued below that his mortgage application was "frustrated as a consequence of Experian's inaccurate reporting," citing his mortgage originator's declaration concerning the potential need for manual underwriting. ROA.4044, Plaintiff's MSJ Opposition. Experian's preservation argument therefore fails.

Nor does *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316 (5th Cir. 2012), establish that a credit denial or increased interest rate is a prerequisite to recovering any actual damages. While *Smith* rejected an abstract reduction in available credit as a compensable economic loss, it affirmed a damages verdict supported by other consequences, including deferred expenditures and emotional distress. *Id.* at 317-18. Here, Plaintiff presented evidence of consequences extending beyond an abstract credit score fluctuation. His mortgage originator personally reviewed Plaintiff's Experian report, identified the falsely attributed Rushmore mortgage and its missed payments as problematic, advised that the account would likely necessitate manual underwriting, and requested supporting documentation for the underwriting process. ROA.6421-22 ¶¶ 6-8, Jones Decl. This evidence established that Experian's inaccurate reporting caused difficulties in an actual mortgage application and corroborated Plaintiff's testimony concerning the consequences of the inaccuracy.

Experian also improperly discounts the substantial time Plaintiff spent attempting to correct its reporting. Following the first reinvestigation, Plaintiff spent months researching how to correct the

Rushmore Account and gathering documents for his second dispute. ROA.1635:4-1636:6, ROA.1748:10-1750:15, Plaintiff's Depo.; ROA.2638-39 ¶¶ 10-11, Espinoza Decl. After Experian rejected that dispute, Plaintiff continued spending time after work researching how to remove the account. ROA.2639 ¶ 15, Espinoza Decl. This Court expressly considered the substantial time a consumer spent attempting to correct inaccurate reporting as evidence supporting actual damages. *See Stevenson*, 987 F.2d at 297; *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3d Cir. 2010) (recognizing that time spent resolving credit reporting errors may be considered when assessing damages).

These circumstances further substantiate the injury caused by Experian's conduct. The district court erred by reducing its damages analysis to credit denials and credit scores without any consideration of the consequences related to Plaintiff's mortgage application, substantial loss of personal time, and independently established evidence of emotional distress and reputational injury.

## II. Experian's alleged need for flexible matching does not establish the reasonableness of its initial or post-dispute reporting procedures.

Experian advances two principal arguments to defend the judgment on Plaintiff's § 1681e(b) claims. First, it contends that its initial matching procedures were reasonable as a matter of law because CRAs purportedly must accommodate incomplete or inconsistent identifying information. Experian's Brief at 33-44. Second, it argues that § 1681i(a) displaces § 1681e(b)'s reasonable procedures requirement after a consumer disputes inaccurate information. *Id.* at 44-47. Neither argument withstands scrutiny. The first overlooks the specific deficiencies in Experian's matching procedures and the substantial identifying differences between Plaintiff and his father. The second disregards § 1681e(b)'s express application "**whenever**" a CRA prepares a consumer report. At minimum, the district court erred by resolving the reasonableness of Experian's procedures as a matter of law without addressing its continued reporting after Plaintiff's disputes.

A. Experian's claimed need for matching flexibility does not establish the reasonableness of its name and address only matching procedures.

Experian begins by describing the purported sophistication of its "Find Consumer" algorithm, asserting that it compares numerous identifying factors and evaluates both similarities and conflicts before

associating information with a consumer. Experian's Brief at 34. But this general description obscures the undisputed fact that Find Consumer requires only a matching name and address. Neither a matching Social Security Number ("SSN") nor a matching date of birth ("DOB") is required. ROA.2064:3-2065:4, Iwanski Depo. I; ROA.2854:12-22, Sumida Depo. Moreover, when asked specifically how the Rushmore Account became associated with Plaintiff's file, Experian identified the name and address as the **sole** basis for that association. ROA.2086:21-2087:2, Iwanski Depo. I. Experian identifies no evidence that any additional matching criteria were required or applied to associate the Rushmore Account with Plaintiff. The question presented by § 1681e(b) is whether a CRA "**follow[ed]** reasonable procedures to assure maximum possible accuracy" when preparing consumer reports – not whether the CRA could have theoretically followed one of its procedures. Thus, the fact that some other procedure may have existed but was not followed is irrelevant.

That distinction is dispositive of Experian's argument for summary judgment – and one with which Experian never meaningfully grapples. Plaintiff does not contend that CRAs must require matching SSNs and DOBs in every circumstance. Rather, he challenges the reasonableness

of Experian's actual minimum matching requirement, which permitted it to associate a mortgage account with Plaintiff based solely on a shared name and address despite substantial identifying differences. Plaintiff and his father had DOBs twenty-five years apart, and the mortgage originated when Plaintiff was only thirteen years old. Tab 10, RE-74-83, ROA.1823-32; Tab 15, RE-96-97, Administrative Report. These facts permitted a reasonable jury to find that Experian's name and address only matching requirement was insufficient to assure maximum possible accuracy.

Experian's attempt to distinguish *Fahey v. Experian Information Solutions, Inc.*, 571 F. Supp. 2d 1082, 1091 (E.D. Mo. 2008) is unconvincing. *See* Experian's Brief at 39-40. While *Fahey* involved an incorrectly attributed cosigner account rather than a mixed file involving a father and son, the court's reasoning applies equally here: a jury could find Experian's procedures unreasonable because Experian "failed to require sufficient identifying information about a consumer before listing accounts on his or her credit report." *Fahey*, 571 F. Supp. 2d at 1091. The critical issue in both cases is the sufficiency of Experian's identifying

requirements, not the specific circumstances producing the erroneous association.

The authorities Experian invokes do not establish otherwise. For instance, Experian relies on *McClelland v. Experian Information Solutions, Inc.*, No. 04 C 5686, 2006 WL 2191973 (N.D. Ill. July 28, 2006), but omits crucial distinctions. There, the opinion identifies no evidence that the inaccurate civil judgment contained additional identifying information which would have easily allowed for a distinction between the father and son. *Id.* at *1-3. Again, Experian confuses a specific holding based on an evidentiary record with some broader legal principle. Nothing in *McClelland* establishes that name and address only matching is reasonable as a matter of law when readily available identifying information would easily distinguish two consumers.

Nor does *Garrett v. Experian Information Solutions, Inc.*, 785 F. Supp. 3d 1077, 1082 (N.D. Fla. 2025), support Experian's position here. There, the consumers were twins whose names and SSNs were nearly identical, who shared an address, whose DOBs were identical, and whose identities had been confused by all three national CRAs. *Id.* Here, by contrast, Plaintiff and his father were separated by twenty-five years,

and the mortgage was opened when Plaintiff was a minor. Moreover, neither Equifax nor Trans Union attributed the Rushmore Account to Plaintiff. ROA.1591:9-25, Plaintiff's Depo.; ROA.3409-10 ¶ 6, Plaintiff's Decl.; *see also* ROA.6421 ¶ 6, Jones Decl. Thus, the specific circumstances the *Garrett* court found compelling are absent here.

Experian's remaining justification – that SSNs and DOBs may sometimes be missing or mistyped – likewise misses the point. *See* Experian's Brief at 38. The mere possibility that identifying information may be unavailable in some cases does not establish that matching consumers based on name and address alone was reasonable in this case, where substantial identifying differences existed. Nor does the general need for flexibility excuse a matching requirement that permits the association of accounts belonging to different generations of the same family without requiring any additional identifying information.

Ultimately, Experian attempts to transform a general principle – that Experian believes flexibility in matching is necessary – into a categorical defense of its specific procedures. But the relevant question is what procedures were actually **followed** and whether those procedures reasonably assured maximum possible accuracy under the circumstances

presented here. They did not, and a jury could readily conclude the same. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 368 (5th Cir. 2001) ("In the majority of cases, reasonableness is a question for the jury."). The district court therefore erred by resolving that question in Experian's favor as a matter of law.

### B. Section 1681e(b) independently governs Experian's post-dispute reporting, and Experian failed to establish that its continued reporting was reasonable.

Experian argues that § 1681e(b) ceases to impose any duties once a CRA completes a reinvestigation under § 1681i(a), asserting that applying both provisions would create redundant statutory obligations. *See* Experian's Brief at 44-47. But this argument disregards the plain language of the statutory text. Section 1681e(b) requires CRAs to follow reasonable procedures to assure maximum possible accuracy "[w]henever" they prepare a consumer report – not merely before a consumer submits a dispute. Nothing in § 1681i eliminates that obligation or even purports to do so. The provisions regulate distinct conduct: § 1681i requires a reasonable reinvestigation when a consumer disputes information in their file, while § 1681e(b) governs the preparation of consumer reports at any time. While these duties may

conceivably overlap, that does not make either redundant. Experian's interpretation would instead read an exception into § 1681e(b) that Congress never enacted or intended.

Courts have repeatedly rejected the notion that a CRA's obligations to follow reasonable procedures end following a dispute. *See discussion and citations in* Plaintiff's Opening Brief at 36-37; *see also Graham v. CSC Credit Servs., Inc.*, 306 F. Supp. 2d 873, 878 (D. Minn. 2004); *Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F.Supp. 962, 968 (S.D.Ohio 1983) (cited with approval in *Stevenson*, 987 F.2d at 293). In *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001), the Seventh Circuit expressly recognized that, after a CRA learns that information concerns different consumers, its continued reporting of that information may constitute a failure to maintain reasonable procedures under § 1681e(b). Likewise, in *Losch*, the Eleventh Circuit reversed summary judgment for Experian on claims under both §§ 1681e(b) and 1681i(a) based on its continued inaccurate reporting after receiving notice of the error. 995 F.3d at 945.[4] And in *Shaunfield v. Experian Information Solutions, Inc.*,

[4] In *Losch*, the Eleventh Circuit expressly recognized the distinction between pre- and post-dispute claims under § 1681e(b), affirming summary judgment on the plaintiff's pre-dispute § 1681e(b) claims and

991 F. Supp. 2d 786, 798-99 (N.D. Tex. 2014), a Texas district court expressly recognized that inaccurate reports prepared after a consumer's dispute and attempted correction could independently violate § 1681e(b).

Experian claims Plaintiff identifies no case permitting a § 1681e(b) claim following a reasonable reinvestigation. Experian's Brief at 45. But Plaintiff cited *Lopez* in his initial brief, in which the court granted Experian summary judgment on the claim under § 1681i but denied summary judgment on the § 1681e(b) claim, explaining that the reappearance of inaccurate information after earlier disputes implicated Experian's reporting procedures **independently** of its reinvestigation obligations. *Lopez*, 2022 WL 1569285, at *3-5. Experian cites no authority stating that these two provisions are inseparable following a consumer's dispute, nor does it refute the substantial authority to the contrary.

Experian responds that its reinvestigation procedures necessarily inform its subsequent reporting. Experian's Brief at 46. Again, this assertion is not evidence of reasonable post-dispute reporting procedures. Experian's reinvestigation procedures apply during the 30-day window

---

reversing the same on post-dispute § 1681e(b) claims. *Losch*, 995 F.3d at 945 n. 6.

following a consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A). Experian's procedures for preparing consumer reports apply "whenever" – in other words, each and every time – Experian prepares a consumer report. 15 U.S.C. § 1681e(b). Experian identified no procedures ensuring that its subsequent reporting accounted for Plaintiff's documentary proof, prevented continued reporting of the known mixed file problem, or otherwise distinguished between disputed and undisputed accounts when preparing subsequent reports. Further, Experian's reliance on its reinvestigation procedures is particularly unpersuasive when the district court expressly found that Experian's second reinvestigation was unreasonable. Tab 4, RE-44-45, ROA.7283-84, Opinion. As the Fourth Circuit has previously indicated, a CRA's failure to maintain procedures addressing an identifiable source of inaccurate reporting can itself support a finding of unreasonable procedures. *Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409, 416-17 (4th Cir. 2001).

Plaintiff expressly raised this independent § 1681e(b) theory in his summary judgment motion and repeatedly identified Experian's failure to substantiate its post-dispute reporting procedures. ROA.1525-28, Plaintiff's MSJ; ROA.4049-51, Plaintiff's MSJ Opposition; ROA.6512-14,

Plaintiff's MSJ Reply. But the district court never addressed the issue. These circumstances warrant summary judgment for Plaintiff. At minimum, Experian's continued reporting despite conclusive documentary proof, coupled with its failure to identify **any** procedures ensuring that subsequent reports accounted for that evidence, presented a jury question concerning the reasonableness of its post-dispute reporting. The district court therefore erred in granting Experian summary judgment on this independent § 1681e(b) theory.

## III. Experian does not dispute that its second reinvestigation was unreasonable, and the evidence also presented a jury question concerning its first reinvestigation.

Experian does not challenge the district court's determination that its second reinvestigation violated § 1681i(a). Experian's Brief at 49-50; Tab 4, RE-44-45, ROA.7283-84, Opinion. Instead, it defends the judgment solely on damages causation and willfulness grounds. Experian's Brief at 49-50. As explained in Sections I and IV, *infra*, neither ground supports summary judgment. Reversal of those rulings therefore warrants partial summary judgment for Plaintiff on the unreasonableness of Experian's second reinvestigation, with any remaining damages issues to be resolved on remand.

Moreover, Experian's actual damages argument cannot independently defeat Plaintiff's willfulness claim. Section 1681n(a)(1)(A) permits statutory damages of $100 to $1,000 without proof of actual damages. *See, e.g., Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144, 1154-55 (11th Cir. 2024); *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 499-500 (8th Cir. 2014); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

Experian separately defends its first reinvestigation by emphasizing that when Plaintiff was asked what was inaccurate about the accounts he was disputing, he stated "it's not mine" without additional explanation. Experian's Brief at 48-49. According to Experian, this permitted it to rely exclusively on the ACDV process. But that argument ignores both Experian's failure to obtain clarifying information and, more importantly, the contradictory information its reinvestigation actually produced. This Court has made clear that a CRA "must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Stevenson*, 987 F.2d at 293; *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986). Even *Barron v. Equifax Info. Servs., L.L.C.*, 802 F. App'x 161, 162 (5th Cir. 2020), upon which Experian relies,

found reliance on ACDVs reasonable because the record provided no factual basis for concluding that the CRAs should have been on notice of a need to go beyond the ACDV process. Here, the record makes clear that Experian knew or should have known that further investigation was necessary.

First, Experian's own witnesses acknowledged deficiencies in its handling of Plaintiff's first dispute. Experian trains its dispute agents to ask clarifying questions to determine the nature of a consumer's "not mine" dispute, yet the agent here asked none. ROA.2032:21-2033:21, Iwanski Depo. I; ROA.2624:14-2625:12, Hamilton Depo.; ROA.6143:22-6144:14, Tab 5, RE-49, ROA.6204:3-19, Avalos Depo. Experian dismisses this omission as a failure to follow a mere "best practice," arguing that no decision requires follow-up questions in every dispute. Experian's Brief at 49. This is a clear red herring; Plaintiff advances no such categorical rule. A jury could reasonably find that Experian's failure to obtain information necessary to distinguish among its many different "not mine" dispute categories rendered this specific reinvestigation unreasonable.

More importantly, the ACDV responses independently provided ample reason for Experian to investigate further, regardless of what

Plaintiff said or did not say during his telephone dispute. Experian knew that the PennyMac and Rushmore Accounts concerned the same underlying mortgage. Tab 8, RE-63-64, ROA.2035:25-2036:21, Iwanski Depo. I. Yet PennyMac's ACDV response supplied an entirely different SSN and DOB, causing Experian to delete that account from Plaintiff's file. Tab 14, RE-94, PennyMac ACDV Response. Approximately two weeks later, Rushmore verified the same mortgage without changing its identifying information, and Experian automatically accepted that response, leaving the Rushmore Account on Plaintiff's file. ROA.1844, First Rushmore ACDV Response. Experian thus treated the same mortgage as belonging to Plaintiff when reported by Rushmore but not when reported by PennyMac. That obvious inconsistency required more than blind acceptance of Rushmore's verification.

Indeed, Experian's own written procedures required escalation when a furnisher supplied a completely different SSN in response to a "Not Mine – Provide Complete ID" dispute. Tab 12, RE-89, ACDV Procedures. Experian did not follow that procedure when PennyMac returned precisely such a response. Tab 8, RE-61, ROA.2009:10-2010:5, Iwanski Depo. I; Tab 5, RE-51, ROA.6206:14-6211:11, Avalos Depo.

Experian cannot defend its reinvestigation by faulting Plaintiff for failing to identify discrepancies that Experian's own records and reinvestigation results revealed.

The Seventh Circuit recently rejected a substantially similar defense in *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 820-21 (7th Cir. 2023), reversing summary judgment because a jury could find Experian's sole reliance on an ACDV response unreasonable when that response conflicted with other information in its possession. The same conclusion follows here. Whether Experian reasonably reinvestigated Plaintiff's first dispute despite its failure to obtain clarifying information, reconcile contradictory furnisher responses, or follow its own escalation procedures was, at minimum, a question for the jury. The district court erred by resolving that question in Experian's favor as a matter of law.

## IV. The district court applied an improperly restrictive willfulness standard and disregarded evidence permitting a jury to find that Experian recklessly violated the FCRA.

Under *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-57, 68-71 (2007), willfulness under § 1681n encompasses both knowing violations and reckless disregard of the FCRA. Recklessness does not require deliberate misrepresentation or concealment; rather, it requires conduct

creating an unjustifiably high risk of violating the statute that is either known or so obvious it should be known. *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). This Court recently reaffirmed that reckless disregard independently qualifies as willfulness. *Schultz v. HomeBridge Fin. Servs., Inc.*, No. 24-50193, 2025 WL 1467431 (5th Cir. May 22, 2025).

Experian insists that the district court applied the correct standard because it cited *Safeco* and discussed considerations purportedly relevant to recklessness. Experian's Brief at 50-51. But merely reciting the correct standard does not establish that the court applied it. Immediately after acknowledging *Safeco*, the district court held that willfulness damages are "appropriate **only** on evidence of 'willful misrepresentations or concealments.'" Tab 4, RE-35, ROA.7274, Opinion (emphasis added). It then rejected Plaintiff's §§ 1681e(b) and 1681i willfulness theories because he failed to establish such misrepresentations or concealments. Tab 4, RE-36, ROA.7275, RE-46, ROA.7285, Opinion. The court thus treated intentional deception as indispensable, without addressing whether Experian's cumulative conduct established reckless disregard. That was legal error.

Under the correct standard, the record readily permitted a jury to find recklessness. Experian repeatedly failed to follow its own procedures at multiple stages of Plaintiff's disputes. During the first dispute, its agent failed to ask follow-up questions contemplated by Experian's training. ROA.2032:21-2033:21, Iwanski Depo. I; ROA.2624:14-2625:12, Hamilton Depo.; ROA.6143:22-6144:14, Tab 5, RE-49, ROA.6204:3-19, Avalos Depo. Then, when PennyMac returned identifying information inconsistent with Plaintiff's SSN and DOB, Experian failed to escalate the matter for mixed file review as its written procedures required. Tab 12, RE-89, ACDV Procedures; Tab 5, RE-51, ROA.6206:14-6211:11, Avalos Depo. During the second dispute, a mail sorter failed to route Plaintiff's documentary proof to the mixed file department, and the dispute agent disregarded separate procedures requiring deletion or escalation. Tab 8, RE-66-69, ROA.2112:9-2115:9, RE-70, ROA.2125:1-18, Iwanski Depo. I; Tab 5, RE-49-51, ROA.6204:20-6206:13, Avalos Depo. These were not merely different descriptions of one mistake; they were independent failures by different employees to follow distinct procedures at successive stages of the reinvestigation process.

Experian attempts to dismiss these repeated failures as isolated human errors[5], invoking *Cameron v. Greater New Orleans Fed. Credit Union*, 713 F. App'x 238, 240 (5th Cir. 2018). Experian's Brief at 53-55. But *Cameron* is easily distinguished. *Cameron* did not hold that repeated departures from established procedures, coupled with evidence of systemic deficiencies, can never constitute recklessness. Indeed, in *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 745-46 (11th Cir. 2020), the Eleventh Circuit upheld a jury's finding of willfulness where a CRA repeatedly disregarded safeguards intended to prevent mismatches and failed to implement adequate procedures to prevent recurring errors. Likewise, courts have recognized that failing to follow a defendant's own established reinvestigation procedures may support a finding of willfulness. *See Westbrook v. Equifax Info. Servs., LLC*, No. 8:23-CV-477-MSS-LSG, 2025 WL 399940, at *10 (M.D. Fla. Feb. 5, 2025).

---

[5] Experian's suggestion that the errors in this case were "isolated" strains credulity. **Every single Experian employee** who touched either of Plaintiff's two disputes failed to follow at least one of Experian's procedures.

The evidence also permitted an inference that Experian's repeated failures reflected systemic practices. Experian required agents to process fifteen disputes per hour, with escalating discipline for failing to meet productivity requirements. ROA.6092:18-6093:24, 6197:20-6198:1, Avalos Depo. Yet it reviewed only eight of 2,400 monthly disputes per agent – roughly 0.3%. ROA.6083:4-6084:1, Avalos Depo. Contrary to Experian suggestion that expert testimony is necessary on this issue (Experian's Brief at 54-55), a jury could easily infer that rapid processing and negligible review created an obvious risk of the repeated failures seen here.

Experian's matching procedures independently supported a finding of recklessness. In 1991, Experian's predecessor entered consent orders specifically addressing the dangers of mixed files and requiring improvements designed to reduce their occurrence, including the use of full identifying information. *F.T.C. v. TRW Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991). Yet Experian's procedures still permit account information to be associated with consumers based solely on matching names and addresses, without requiring matching SSNs or DOBs. ROA.2064:3-2065:4, Iwanski Depo. I; ROA.2854:12-22, Sumida Depo.

And Experian knew that Hispanic naming conventions can present particular matching difficulties. Tab 8, RE-65, ROA.2108:5-10, Iwanski Depo. I. This known risk materialized when Experian attributed Plaintiff's father's mortgage to Plaintiff despite a twenty-five-year age difference and a loan origination date when Plaintiff was thirteen.

Experian argues that the 1991 orders did not expressly prohibit matching by name and address only and that its procedures were modified in 2008 and 2018. Experian's Brief at 51-52. But neither point resolves the relevant question. The orders established longstanding notice of the risks associated with insufficient identifying information; they need not have prescribed a particular matching formula to be relevant. Nor does the mere fact of subsequent modifications establish that Experian eliminated the risk when its current procedures still permit the same minimal matching threshold. And although other CRAs' failure to associate Plaintiff with the Rushmore Account does not independently prove Experian's procedures unreasonable, it provides additional evidence from which a jury could assess whether the risk was avoidable. ROA.6421 ¶ 6, Jones Decl.

Nor does *Safeco* immunize Experian merely because no appellate decision has prescribed a specific matching algorithm. *Safeco* addressed the objective reasonableness of a defendant's interpretation of statutory requirements, not a categorical exemption for procedures that courts have not previously examined in precisely the same factual circumstances. 551 U.S. at 69-70. Experian identifies no objectively reasonable statutory interpretation that required or justified disregarding the known risks of its matching procedures. The absence of a judicially mandated matching formula therefore does not foreclose a finding that Experian recklessly disregarded its obligation to assure maximum possible accuracy.

Viewed collectively, Experian's longstanding notice of mixed file risks, permissive matching requirements, repeated violations of its own reinvestigation procedures, demanding production quotas, minimal quality review, and continued reporting despite conclusive documentary proof permitted a reasonable jury to find that Experian ran a risk of violating the FCRA substantially greater than ordinary carelessness. The district court erred by treating the absence of intentional deception as dispositive and resolving evidence of recklessness in Experian's favor.

Accordingly, the district court's summary judgment ruling on willfulness should be reversed.

## CONCLUSION AND RELIEF REQUESTED

Under the FCRA, a dispute is supposed to change what happens next. It is not supposed to send a consumer back through the same machinery that produced the error, untouched by the information the consumer provides. Yet that is the world Experian's position would endorse: procedures may be completely ignored, contradictory information may be overlooked, and the resulting failures may be dismissed as legally inconsequential. If accepted, the statutory right to a reinvestigation becomes no more than a right to ask again.

Plaintiff did more than ask again. He identified an account that was not his and supplied documents demonstrating why it could not be his. Experian continued reporting it anyway. The district court compounded that failure by discounting corroborated injuries and resolving disputed inferences in Experian's favor. Those determinations belonged to a jury.

The protections Congress enacted must mean more than a right to have an error repeatedly verified. This Court should reverse, direct partial summary judgment for Plaintiff on Experian's unreasonable

second reinvestigation and post-dispute reporting, and remand the remaining issues of liability, willfulness, and damages for trial.

**Respectfully submitted,**


*/s/ James Ristvedt*
James Ristvedt (AZ Bar No. 035938)
**CONSUMER JUSTICE LAW FIRM PLC**
8095 North 85th Way
Scottsdale, Arizona 85258
T: (480) 626-1956
E: jristvedt@consumerjustice.com

*Attorneys for Plaintiff – Appellant Victor Manuel Ramirez Najera*

## CERTIFICATE OF FILING AND SERVICE

I, James Ristvedt, hereby certify that on October 27, 2026, I electronically filed the foregoing brief with the Clerk of Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Opposing counsel has therefore been served pursuant to 5th Cir. R. 25.2.5.

*/s/ James Ristvedt*
James Ristvedt
**CONSUMER JUSTICE LAW FIRM PLC**

*Attorneys for Plaintiff – Appellant Victor Manuel Ramirez Najera*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), and 5th Cir. R. 32.2, because it contains 6,452 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point font named Century Schoolbook.

*/s/ James Ristvedt*
James Ristvedt
**CONSUMER JUSTICE LAW FIRM**

*Attorneys for Plaintiff – Appellant Victor Manuel Ramirez Najera*